KATHLEEN PESSIN et al., Derivatively on Behalf of BHC COM-
MUNICATIONS, INC., Appellants, v CHRIS-CRAFT INDUSTRIES,
INC., et al., Respondents.

First Department, June 30, 1992

### APPEARANCES OF COUNSEL

*Joseph M. Seitzman* for appellants.

*Myron Kirschbaum* of counsel *(Peter M. Fishbein* and *James D. Herschlein* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for respondents.

### OPINION OF THE COURT

MILONAS, J.

This is a shareholder derivative action for damages arising out of the alleged abuses by defendant Chris-Craft Industries, Inc., as the majority shareholder of defendant BHC Communications, Inc. (BHC), a television broadcasting company, to the detriment of BHC, its minority shareholder, Warner Communications, Inc. (WCI) and the shareholders of WCI. The issue in this case is whether the plaintiffs, who were shareholders of BHC when the action was commenced but not at the time the alleged wrongs were committed, have standing to maintain this action.

Plaintiffs Kathleen Pessin and Joseph E. Kovacs acquired stock in WCI around 1983. In January of 1984, WCI came into possession of 42.5% of BHC's common stock and BHC assumed a substantial interest in WCI pursuant to a shareholders agreement between Chris-Craft and WCI. BHC, which until that time was a wholly owned subsidiary of Chris-Craft, is still entirely managed and operated by Chris-Craft. The 1984 agreement was then modified in February of 1986 when Chris-Craft, BHC and WCI arranged that BHC, as a major shareholder of WCI, be accorded certain remedies, including the sale or distribution of WCI stock, upon the occurrence of a significant change at WCI. In March of 1989, WCI and a subsidiary of Time Warner, Inc. (TWI) executed a merger agreement whereby WCI became a wholly owned subsidiary of TWI, but plaintiffs remained shareholders of WCI.

Shortly thereafter, WCI and TWI commenced a lawsuit in Delaware against BHC and Chris-Craft seeking to compel them to invoke their remedies under the significant change provision of the 1986 modification. The litigation, however, was settled in May of 1989 by a stipulation between the parties, which was then "so ordered" by the court. The stipu-

lation, in part, required WCI to dispose of its BHC stock, either by private sale or public auction, at BHC's option. BHC subsequently elected to have the stock distributed to WCI's shareholders. Another settlement agreement followed in August of 1989 whereby BHC consented to having WCI's BHC stock encompassed into the consideration given to WCI's shareholders upon consummation of the merger between WCI and TWI, which took place on January 10, 1990 and was approved by a vote of WCI's shareholders. Consequently, plaintiffs became shareholders of BHC. As of that date, Chris-Craft owned all class B shares, convertible to class A, of BHC, amounting to 60% of the stock and 92.4% of the vote. The former WCI shareholders, including plaintiffs, owned the remaining class A shares for a 40% portion of the company and 7.6% of the vote. Plaintiffs now contend that Chris-Craft used the foregoing agreements to, in effect, loot BHC, to the detriment of both BHC and WCI. However, the substantive allegations in the complaint are not pertinent to the instant appeal. Instead, what is involved herein is plaintiffs' standing to maintain this action.

Plaintiffs originally instituted suit as a class action on behalf of former WCI shareholders. Then, in response to defendants' motion to dismiss, they submitted an amended complaint which added derivative and double derivative claims on behalf of BHC. Defendants again moved to dismiss pursuant to CPLR 3211 on the ground that plaintiffs lacked standing and, therefore, failed to state a cause of action. In granting the motion to dismiss, the Supreme Court concluded that while plaintiffs were shareholders at the time that they commenced this action, thus satisfying the first requirement of Business Corporation Law § 626 (b), they did not meet the second condition that they be shareholders when the supposed wrongs were committed. The court explained that "[t]he two transactions which form the basis of the amended complaint are the May 1989 agreement authorizing additional fees to be paid by BHC to Chris-Craft for management services and the July 1989 management agreement authorizing BHC to reimburse Chris-Craft for certain bonuses. At the time of these alleged wrongs, BHC had only two shareholders: Chris Craft, owning approximately 60% of the shares, and WCI, owning approximately 40% of the shares. Plaintiffs did not become shareholders until January 1990, after these transactions took place. Consequently, they do not have standing to assert a derivative claim on BHC's behalf." The Supreme Court also

rejected plaintiffs' double derivative theory, finding that such a claim would be cognizable only if WCI either controlled BHC or was under the command of Chris-Craft but that neither was the case.

■■ Plaintiffs moved for reargument and renewal, arguing that since the 1989 stipulation had been "so-ordered" by the court in Delaware, their acquisition of BHC shares was by operation of law, and this undermined the control factor as to the double derivative cause of action. Although the court granted reargument and renewal, it adhered to its prior decision, holding that the so-ordered stipulation constituted a voluntary agreement. The court also noted that while WCI had the opportunity to bring its own derivative suit in 1989, it had not done so. Although plaintiffs do not specifically appeal from this ruling, they do urge that they are in compliance with the contemporaneous ownership doctrine in that their interests at the time of the purported wrong devolved upon them by the operation of law and that, in any event, WCI's lack of control over BHC does not bar the double derivative claim. Plaintiffs are mistaken.

■■ Business Corporation Law § 626 (b) mandates that shareholders instituting a derivative action must demonstrate that they owned stock both when the lawsuit was brought and at the time of the transaction(s) of which they complain. Plaintiffs concede that they did not own stock in BHC when the alleged misconduct took place and that the contemporaneous ownership rule is strictly enforced (*Independent Investor Protective League v Time, Inc.*, 50 NY2d 259, 263). Therefore, unless plaintiffs can show that their shares or interest in BHC devolved upon them by operation of law, the limited exception authorized by Business Corporation Law § 626 (b), they are precluded from maintaining this action. It should be noted that plaintiffs contend that the issue of contemporaneous ownership is governed by Delaware law. However, this matter involves the regulation of conduct rather than of loss allocation. As the Court of Appeals observed in *Schultz v Boy Scouts* (65 NY2d 189, 196): "Historically, choice-of-law conflicts in tort actions have been resolved by applying the law of the place of the wrong. In *Babcock v Jackson* (12 NY2d 473, *supra),* we departed from traditional doctrine, however, and refused to invariably apply the rule of *lex loci delicti* to determine the availability of relief for commission of a tort. In doing so, we applied New York law to an action involving New York parties in which recovery was sought for injuries received in

an automobile accident in Ontario, Canada. Ontario's guest statute barred recovery by the plaintiff passenger but we refused to apply Ontario law in the New York action, holding that 'controlling effect' must be given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation' *(Babcock v Jackson, supra,* at p 481)."

If this litigation merely concerned the internal affairs of a Delaware corporation, then Delaware would have the greatest interest. Yet, what is involved herein is simply a question of contemporaneous ownership as defined in Business Corporation Law § 626 *(see, Independent Investor Protective League v Time, Inc., supra),* which expressly applies to an action "brought in the right of a domestic or foreign corporation" (Business Corporation Law § 626 [a]), and not even plaintiffs can reasonably expect another State to interpret a New York State statute in preference to a New York State court doing so. In that regard, under New York law, an interest is conferred by operation of law under Business Corporation Law § 626 and its predecessor statutes only if it occurs automatically by application of some legal mandate or doctrine, not by the voluntary actions of private parties. Thus, where shares are acquired through a will or intestacy, they devolve by operation of law since neither the decedent nor recipient had any control over the death *(Salter v Columbia Concerts,* 191 Misc 479; *see also, Singer v State Laundry,* 188 Misc 583). In contrast, shares that are obtained through some deliberate act, such as by gift or contract, do not devolve by operation of law *(Myer v Myer,* 271 App Div 465, *affd* 296 NY 979; *see also, Stephenson v Landegger,* 337 F Supp 591, *affd* 464 F2d 133, *cert denied* 409 US 1039, which cited *Myer v Myer, supra* in observing that under New York State law, the subject stock interest became effective not by operation of law but by contract).

■ Although plaintiffs themselves may have done nothing to procure their BHC stock, it is clear that the party from whom they acquired these securities, WCI, voluntarily entered into contracts which ultimately brought about that result. In 1986, WCI, along with BHC and Chris-Craft, executed a modified shareholders agreement in which WCI agreed with BHC that if there was a significant change at WCI, BHC could require WCI to dispose of its BHC stock by selling it to BHC or by distributing it to WCI's shareholders. Then, in 1989, WCI

voluntarily entered into a merger with TWI. It is true that the four corporate parties at first engaged in a dispute over whether the proposed merger constituted a significant change under the modified shareholders agreement so that WCI and TWI commenced a lawsuit in Delaware, another voluntary act. The litigation was also voluntarily settled, and the mere mechanical "so ordered" of the stipulation does not render a purely volitional choice into an operation of law. Indeed, further agreements ensued in 1989 in which WCI participated, again voluntarily. Pertinently, in August of 1989, BHC permitted TWI and WCI to include WCI's BHC shares as part of the consideration to be paid to WCI's shareholders, including plaintiffs, for the merger between WCI and TWI.

As an alternate theory of recovery, plaintiffs advance double derivative standing. According to this theory, they urge that because WCI, of which they were shareholders, was a shareholder of BHC at the time of the purported harm, they can assert a claim on behalf of BHC. However, the basis of a double derivative allegation is control (*Kaufman v Wolfson*, 1 AD2d 555). Where a stockholder controls a subsidiary, and there is no independence between the parent stockholder and the subsidiary, it cannot be expected that the controlling stockholder will authorize a suit on behalf of the subsidiary against itself for harm to the subsidiary. Therefore, double derivative standing is conferred on the minority shareholders of the controlling stockholder. Since the putative wrongdoers cannot be counted upon to sue themselves, there would otherwise be nobody with a valid interest in correcting the damage done to the minority or to the subsidiary (*see, Kaufman v Wolfson, supra*). Yet, plaintiffs are not entitled to rely upon double derivative standing because WCI did not control BHC at the time of the supposed harm. In fact, as a 42.5% shareholder of BHC, WCI could have sued for the supposed wrong to BHC, which took place many months before WCI distributed its BHC shares. At any rate, it was Chris-Craft that dominated and controlled BHC, so there can be no question of whether WCI was unwilling to sue itself or its own controlling stockholder unless it was itself under the direct control of Chris-Craft or indirectly so by being under the control of BHC. It is axiomatic that a double derivative action may not be maintained by a shareholder of one corporation that merely owns stock in the allegedly wronged corporation where the first does not control the second (*Kaufman v Wolfson, supra; Breswick & Co. v Harrison-Rye Realty Corp.*, 280 App Div 820).

Not only did WCI not control BHC, but neither BHC nor, through it, did Chris-Craft control WCI when the purported harm took place. Therefore, the Supreme Court properly denied petitioners' double derivative claim, as well as their operation of law argument, and granted dismissal of the complaint.

Accordingly, the order of the Supreme Court, New York County (Myriam J. Altman, J.), entered on April 17, 1991, which granted defendants' motion to dismiss the amended complaint, is affirmed, with costs and disbursements.

MURPHY, P. J., ELLERIN, ASCH and RUBIN, JJ., concur.

Order Supreme Court, New York County, entered April 17, 1991, affirmed, with costs and disbursements.