Lloyd P. WEBRE, Jr., individually and Derivatively on Behalf of Texas United Corporation and United Salt Corporation, Appellant,

v.

Robert Wayne SNEED, James H. Tichenor, Fred Wolgel, James F. O'Donnell, Texas United Corporation, and United Salt Corporation, Appellees.

No. 01–10–00151–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 28, 2011.

Rehearing En Banc Overruled Dec. 7, 2011.

Christopher Paul Hanslik, Jennifer Lynn Hebert, Boyar & Miller, P.C., David W. Holman, The Holman Law Firm, P.C., Dwayne Day, Dwayne R. Day, P.C., Michael Gary Orlando, Orlando & Braun, L.L.P., Houston, TX, for Appellant.

Ralph A. Midkiff, Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams & Martin, Allison Bonner Johanson, Paul J. McConnell, DeLange, Hudspeth, McCon-

nell & Tibbets, LLP, Ann Tuxbury Le-beck, Brandon T. Allen, Robin C. Gibbs, Sydney Gibbs Ballesteros, Gibbs & Bruns L.L.P., Charles W. Schwartz, Skadden, Arps, Slate, Meagher & Flom LLP, Karen Appel Oshman, Neal S. Manne, Susman & Godfrey LLP, Houston, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and YATES.*

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Lloyd Webre, appeals the trial court's dismissal of his suit pursuant to a plea to the jurisdiction filed by appellees, Robert Wayne Sneed, James H. Tichenor, Fred Wolgel, James F. O'Donnell, Texas United Corporation ("Texas United"), and United Salt Corporation ("United Salt"). In six issues, Webre argues that the trial court erred in granting the plea to the jurisdiction and motion to dismiss because (1) Webre, as a shareholder in Texas United, the beneficial owner of the shares of its wholly owned subsidiary United Salt, had standing to bring a derivative action against both companies; (2) the written demand requirements of article 5.14(C) of the Texas Business Corporations Act ("TBCA"),[1] regarding the procedural requirements for bringing a derivative suit, do not apply to closely held corporations; (3) pursuant to TBCA article 5.14(L), rejection-of-demand procedures that apply to shareholder derivative suits on behalf of corporations generally do not apply to derivative actions brought on behalf of closely held corporations; (4) appellees' argument that Webre is estopped from recovery does not present grounds for dismissal for lack of standing; (5) the business judgment rule for shareholder derivative actions set out in article 5.14 and asserted by appellees as a ground for denying Webre standing to bring suit does not apply to suits brought on behalf of closely held corporations; and (6) a determination under article 5.14(L) of whether Webre is entitled to recover damages directly or whether any recovery ought to be paid to the corporation is not a proper basis for denying standing.

We reverse and remand.

## Background

Texas United and United Salt are companies in the business of mining, manufacturing, and selling salt and related activities. Texas United is a holding company with six shareholders, and United Salt is its wholly owned subsidiary. Webre is a 24% shareholder in Texas United, and he serves on the boards of directors of both companies. Sneed is the President and CEO of Texas United, Tichenor is the Senior Vice President of Texas United and also serves on the board of directors for

---

* The Honorable Leslie B. Yates, former Justice of the Fourteenth Court of Appeals, sitting by appointment.

1. The parties cite the Texas Business Corporation Act ("TBCA"). We note that TBCA article 5.14 was recodified as part of the Texas Business Organizations Code, effective January 1, 2006. *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, §§ 1, 17, 2003 Tex. Gen. Laws 267, 448–51, 597 (current version at TEX. BUS. ORGS.CODE ANN. §§ 21.551–.563 (Vernon 2007)). Chapter 402 of the Business Organizations Code provides that for any enti-ty formed prior to 2006, article 5.14 applies until December 31, 2009, unless the entity elects to adopt the code prior to that date. *See* TEX. BUS. ORGS.CODE ANN. §§ 402.001, .003, .005 (Vernon 2010). We further note that TBCA article 5.14(L), which is the statutory provision central to this case, was codified as *Business Organizations Code* section 21.563 with no substantive changes. The entities at issue here were formed prior to 2006, and this lawsuit was filed on April 13, 2009. Thus, we cite to article 5.14.

United Salt, Wolgel is the General Counsel of both United Salt and Texas United, and O'Donnell is the President and CEO of United Salt. The individual appellees also serve as officers for various related companies. Sneed, Wolgel, and Tichenor are officers of a company referred to by the parties as "Texas Brine," and Sneed is an officer of Texas Brine Company—Saltville, LLC. Although Texas United and United Salt hold separate board meetings, the same people serve on the board of directors for both companies: Lloyd Webre (appellant); his siblings Camille (Webre) Tichenor, Roberta (Webre) Rude, Mary I. Webre; and spouses and unrelated people, James Tichenor, Arnold J. Webre, and Robert D. Duboise.

Webre's dispute with Sneed, Tichenor, O'Donnell, and Wolgel (collectively, "the officers") arose over United Salt's acquisition of a salt mining and storage facility located in Saltville, Virginia ("Saltville Acquisition"). On April 9, 2009, Webre filed a shareholder derivative suit against the officers for actions they took regarding the Saltville Acquisition.

According to Webre's pleadings, officers of United Salt began looking into the purchase of the Saltville facilities. Webre alleges that, in the course of completing this acquisition, the officers made various misrepresentations to the United Salt board regarding the nature of the business to be conducted at Saltville and the quality of the salt and the facilities. Webre also alleges that the officers failed to properly investigate various aspects of the Saltville Acquisition, including costs for drilling brine wells and other financial aspects. Webre further alleges that the officers entered into various agreements with other related entities, including Texas Brine, which it was not authorized or qualified to perform. He alleges that United Salt's board of directors approved the Saltville Acquisition and subsequent related transactions and spending resolutions based on the misleading and intentionally incomplete information presented by the officers.

Webre alleges that the officers breached fiduciary duties owed to Texas United and United Salt by "failing to fully investigate the Saltville Acquisition and its implications before obtaining approval for the acquisition from the United Salt Board of Directors" and "failing to investigate concerns about the Saltville Acquisition brought to their attention by Webre"; by "failing to disclose all known information about the Saltville facility and operations to the United Salt and Texas United Board of Directors"; by entering into various agreements without approval from United Salt's and Texas United's boards of directors and by "failing to inform" the boards about those agreements; by "exceeding their spending authority without first seeking Board of Directors approval"; by "entering into contracts which obligated United Salt to perform services [that] it did not have the experience or capability to perform" and by "entering into contracts with related entities that did not have the experience or capability to perform the services the contract obligated them to perform."

Webre also alleges that the officers' "wrongful actions include breaches of the duty of loyalty and utmost good faith, the duty of candor, the duty to act with integrity of the strictest kind, the duty of fair, honest dealing, and the duty of full disclosure."

Additionally, Webre has pled a cause of action for fraud, alleging that the officers "made repeated false representations regarding the Saltville Acquisition to the Board of Directors of United Salt and Texas United" and that they "manipulated the financial records and pro forma ac-

counting analyses relating to the Saltville Acquisition." Webre alleges that these misrepresentations were "material and intended to induce the Board of Directors of United Salt and Texas United to approve resolutions relating to the Saltville Acquisition" and were justifiably relied upon by the boards.

Webre alleges that, as a result of these breaches of fiduciary duty and fraudulent acts, Texas United and United Salt were both harmed. Specifically, he alleges that the companies suffered losses due to problems that "could have been alleviated through proper planning and proper use of resources," that both companies lost profitability, and that the misrepresentations led to higher performance bonuses to the officers than would have been justified under more accurate financial forecasts for the companies.

Webre filed suit on behalf of himself, individually, and on behalf of Texas United and United Salt, derivatively, on April 9, 2009, against O'Donnell, Sneed, Wolgel, and Tichenor. O'Donnell, Sneed, and Wolgel filed pleas to the jurisdiction arguing that Webre lacked standing to bring his suit because he is not a shareholder of United Salt, he had not filed a written demand letter as required by TBCA article 5.14(C), and "justice" did not require him to bring a direct action under TBCA article 5.14(L).

Texas United and United Salt intervened as defendants on June 9, 2009, and filed their "Special Exceptions, Motion to Dismiss, Motion for Summary Judgment, or in the alternative, Plea in Abatement" arguing that Webre lacked standing to bring his suit because he is not a shareholder of United Salt; his suit is a "double derivative" suit which he lacks standing to bring; he lacks authority from the corporations to sue; his prior demands as a director preclude standing; he lacks standing to sue under the business judgment rule; he is estopped from suing due to his receipt of benefits from the Saltville Acquisition; and he lacks standing to sue under article 5.14(L) because his suit is "unjust and inequitable."

Tichenor later filed his own plea to the jurisdiction and motion to dismiss arguing that Webre lacks standing to bring his claims because he did not file a written demand pursuant to TBCA article 5.14(C) and he is not a shareholder of United Salt. Tichenor's plea also incorporated the pleadings of the other defendants.

The trial court granted the pleas to the jurisdiction and motions to dismiss "due to [Webre's] lack of standing." Following its orders dismissing all of the defendants in this case, the trial court entered final judgment on November 23, 2009, and this appeal followed.

### Standing in a Derivative Suit

All of Webre's issues assert that the trial court erred in finding that he did not have standing to bring his claims.

### A. Standing Generally

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Thus, standing is never presumed, cannot be waived, and can be raised for the first time on appeal. *Id.* at 443–45. We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

A plea to the jurisdiction is a dilatory plea that is intended to defeat a cause of action regardless of whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The pleader must allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. If a plea to the jurisdiction challenges the existence of jurisdictional facts, as here, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *See Bland*, 34 S.W.3d at 555. "When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable." *Miranda*, 133 S.W.3d at 227. If the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, then the trial court must determine if a fact issue exists. *Id.* In reviewing the trial court's determinations, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* However, if the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. After a defendant asserts and supports with evidence that the trial court lacks subject-matter jurisdiction, the plaintiff is required, when the facts underlying the merits and sub-ject-matter jurisdiction are intertwined, to show that there is a disputed material fact question regarding the jurisdictional issue. *Id.* at 228.

Generally, unless standing is conferred by statute, a plaintiff must demonstrate that he "possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446 ("The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.") (internal quotation omitted).

## B. Law of Stockholder Standing

A corporate officer owes a fiduciary duty to the corporation, but, absent some contract or special relationship, he does not owe a fiduciary duty to an individual shareholder. *Redmon v. Griffith*, 202 S.W.3d 225, 233 (Tex.App.-Tyler 2006, pet. denied). Furthermore, "a corporate shareholder has no individual cause of action for personal damages caused solely by a wrong done to the corporation." *Id.* Likewise, individual stockholders generally "have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Perry v. Cohen*, 285 S.W.3d 137, 144 (Tex. App.-Austin 2009, pet. denied) (quoting *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990)). "Accordingly, an action for such injury must be brought by the corporation, not individual shareholders." *Id.*

Thus, "to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each

shareholder will be made whole if the corporation obtains compensation from the wrongdoer." *Redmon,* 202 S.W.3d at 234 (citing *Faour v. Faour,* 789 S.W.2d 620, 622 (Tex.App.-Texarkana 1990, writ denied)). "[T]he right to proceed against an officer or former officer of a corporation for breaching a fiduciary duty owed to the corporation belongs to the corporation itself." *Grinnell v. Munson,* 137 S.W.3d 706, 718 (Tex.App.-San Antonio 2004, no pet.). In a shareholder derivative suit, "the individual shareholder steps into the shoes of the corporation and usurps the board of directors' authority to decide whether to pursue the corporation's claims." *In re Crown Castle Int'l Corp.,* 247 S.W.3d 349, 355 (Tex.App.-Houston [14th Dist] 2008, orig. proceeding).

Both the now-superseded TBCA, and its successor, the Business Organizations Code, specifically provide for shareholder derivative proceedings. TEX. BUS. CORP. ACT. ANN. art. 5.14 (current version at TEX. BUS. ORGS.CODE ANN. §§ 21.551–.563 (Vernon Supp. 2010)). Article 5.14 defines "derivative proceeding" as "a civil suit in the right of a domestic corporation...." *Id.* art. 5.14(A)(1). It states that the term "'shareholder' includes a beneficial owner whose shares are held in a voting trust or by a nominee on the beneficial owner's behalf." *Id.* art. 5.14(A)(2).

Article 5.14 goes on to make various procedural provisions. Specifically, it provides:

B. *Standing.* A shareholder may not commence or maintain a derivative proceeding unless the shareholder:

(1) was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder by operation of law from a person that was a shareholder at that time; and

(2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

C. *Demand.* No shareholder may commence a derivative proceeding until:

(1) a written demand is filed with the corporation setting forth with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action; and

(2) 90 days have expired from the date the demand was made ...

D. *Stay; Discovery.*

(1) If the ... corporation commences an inquiry into the allegations made in a demand or petition and the person or group described in section H of this Article is conducting an active review of the allegations in good faith, the court shall stay a derivative proceeding until the review is completed....

(2) If a domestic or foreign corporation proposes to dismiss a derivative proceeding pursuant to section F of this Article, discovery by a shareholder following the filing of the derivative proceeding in accordance with the provisions of this Article shall be limited to facts relating to whether the person or group described in Section H of this Article is independent and disinterested, the good faith inquiry and review by such a person or group, and the reasonableness of the procedures followed by such person or group in conducting its review and will not extend to any facts or substantive matters with respect to the act, omission, or other matter that is the

subject matter of the action in the derivative proceeding....

E. *Tolling of the Statute of Limitations.* A written demand filed with the corporation under Section C of this Article tolls the statute of limitations on the claim....

F. *Dismissal of Derivative Proceeding.* A court shall dismiss a derivative proceeding on a motion by the corporation if the person or group described in Section H of this Article determines in good faith, after conducting a reasonable inquiry and based on the factors as the person or group deems appropriate under the circumstances, that the continuation of the derivative proceeding is not in the best interests of the corporation. In determining whether the requirements of the previous sentence have been met, the burden of proof shall be on:

(1) the plaintiff shareholder, if a majority of the board of directors consists of independent and disinterested directors at the time the determination is made or if the determination is made by a panel of one or more independent and disinterested persons appointed under Section H(3) of this Article; or

(2) the corporation, in all other circumstances....

G. *Commencement of Proceeding After Rejection of Demand.* If a derivative proceeding is commenced after a demand is rejected, the petition must allege with particularity facts that establish that the rejection was not made in accordance with the requirements of Sections F and H of this Article.

H. *Determination by Directors or Independent Persons.* The determination described in Section F of this Article must be made by:

(1) a majority vote of independent and disinterested directors ... if [they] constitute a quorum of the board of directors;

(2) a majority vote of a committee consisting of two or more independent and disinterested directors appointed by a majority vote of one or more independent and disinterested directors ...; [or]

(3) a panel of one or more independent and disinterested persons appointed by the court on a motion by the corporation....

I. *Discontinuance or Settlement.* A derivative proceeding may not be discontinued or settled without the approval of the court.

J. *Payment of Expenses.*

(1) On termination of a derivative proceeding, the court may order:

(a) the ... corporation to pay the expenses of the plaintiff incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the ... corporation;

(b) the plaintiff to pay the expenses of the ... corporation or any defendant incurred in investigating and defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose....

*Id.* art. 5.14(B)-(J).

Regarding closely held corporations, article 5.14 provides:

(1) The provisions of Sections B through H of this Article are not applicable to a closely held corporation. If justice requires:

(a) a derivative proceeding brought by a shareholder of a closely held corporation may be treated by a

court as a direct action brought by the shareholder for his own benefit; and

(b) a recovery in a direct or derivative proceeding by a shareholder may be paid either directly to the plaintiff or to the corporation if necessary to protect the interests of creditors or other shareholders of the corporation.

(2) For purposes of this section, a "closely held corporation" means a corporation:

(a) with less than 35 shareholders; and

(b) that has no shares listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association.

*Id.* art. 5.14(L).

■ However, a shareholder may bring a cause of action to recover damages for wrongs done to him individually when a wrongdoer violates a duty owed directly to the shareholder. *Perry*, 285 S.W.3d at 144. "It is the nature of the wrong, whether directed against the corporation only or against the shareholder personally, not the existence of injury, which determines who may sue." *Redmon*, 202 S.W.3d at 234.

## C. Webre's Standing to File a Derivative Suit as a Shareholder of Texas United and United Salt

In his first issue, Webre argues that the appellees' pleas to the jurisdiction and motions to dismiss address only his standing to bring suit on behalf of United Salt but his suit was brought on behalf of both United Salt and Texas United. He is a 24% shareholder in Texas United, which, in turn, is a 100% shareholder of United Salt.

### ·1. Webre's Standing to Bring a Derivative Suit on behalf of Texas United

The breaches of fiduciary duty and fraud alleged in Webre's petition create a cause of action for United Salt—Webre's claims arising from the Saltville Acquisition allege that United Salt suffered a direct injury. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Perry*, 285 S.W.3d at 144.

Furthermore, Webre alleges that Texas United suffered direct harm from the officers' misrepresentations to its board following the Saltville Acquisition and as the sole shareholder of United Salt because of the interrelated nature of the companies and their management. He alleges that both Texas United and United Salt suffered losses due to problems that "could have been alleviated through proper planning and proper use of resources," that both companies lost profitability, and that the misrepresentations led to payment of higher performance bonuses to the officers than would have been justified under more accurate financial forecasts for the companies.

■ Webre is undisputedly a shareholder in Texas United, which both parties agree is a closely held corporation. Thus, he has standing as a shareholder to bring a derivative suit on behalf of Texas United for harm suffered by Texas United as a result of the officers' actions. *See Wingate*, 795 S.W.2d at 718–19; *Redmon*, 202 S.W.3d at 234.

Thus, the question presented to this Court is whether Webre as a shareholder of Texas United can bring a suit against the officers on behalf of Texas United's wholly owned subsidiary, United Salt.

### 2. Webre's Standing to Bring a Derivative Suit on Behalf of United Salt

Webre argues that, as a shareholder in Texas United, which is the beneficial owner of the shares of its wholly owned sub-

sidiary United Salt, he also has standing to bring a derivative action on behalf of United Salt. Webre cites *Roadside Stations, Inc. v. 7HBF, Ltd., & Nu–Way Distrib. Co.,* 904 S.W.2d 927 (Tex.App.-Fort Worth 1995, no writ).

In *Roadside,* the court addressed the "question of whether a stockholder in the parent company can bring a [derivative] suit on behalf of a subsidiary." 904 S.W.2d at 930. The court cited the version of article 5.14(B) in effect at the time,[2] which provided that a derivative suit can be brought only if "[t]he plaintiff was a record or beneficial owner of shares ... at the time of the transaction of which he complains...." *Id.* at 930.

The *Roadside* court reasoned:

Stockholders of a corporation are the equitable owners of the assets of the corporation. Consequently, 7HBF, as a stockholder with a fifty percent interest in Nu–Way, Inc., also is an equitable owner of fifty percent of the stock of Nu–Way Distributing Co. because Nu–Way, Inc. is the owner of all stock in Nu–Way Distributing Co. We agree with the Chancery Court of Delaware that such an equitable ownership interest gives one standing to bring a derivative suit. Therefore, we conclude 7HBF has standing to bring this derivative suit.

*Id.* at 931 (citing *Jones v. Taylor,* 348 A.2d 188, 190 (Del.Ch.1975) (stating that, under Delaware law, for purposes of derivative action, "stockholder" includes equitable owners) (other internal citations omitted)).

■ We conclude that this same reasoning applies in the instant case. Webre,

as a stockholder in Texas United, is also an equitable owner of stock in United Salt because Texas United owns all of the stock in United Salt. *See id.* Thus, Webre can properly be considered a stockholder for purposes of bringing a derivative suit on behalf of United Salt.

The appellees argue that *Roadside* does not apply to this case. However, appellees' argument that the court's discussion on this issue is "sheer dicta" is a misreading of the case, as the opinion makes clear that the analysis recounted above was required to resolve the *Roadside* appellant's second issue. *See id.* at 930–31. Furthermore, appellees' argument that *Roadside* applies a different version of the TBCA is unavailing. Although *Roadside*'s version of article 5.14(B) allowed "beneficial owners" to file derivative suits and the version applicable here allows a "shareholder" to file derivative suits, the applicable version of article 5.14(A) does not exclude "equitable owners" from its definition of a shareholder. *See* TEX. BUS. CORP. ACT ANN. art. 5.14(A)(2) (stating only that " 'shareholder' includes a beneficial owner whose shares are held in a voting trust or by a nominee on the beneficial owner's behalf"); *cf. Jones,* 348 A.2d at 190 (stating that, under Delaware law, for purposes of derivative action, "stockholder" includes equitable owners) (citing *Rosenthal v. Burry Biscuit Corp.,* 60 A.2d 106, 111 (Del.Ch.1948) (analyzing purpose of provisions requiring that plaintiff bringing derivative action be stockholder at time complained-of action occurred, and stating that "the statute leaves untouched the question as to whether an equitable owner of stock can main-

---

**2.** The version of article 5.14 in effect at the time the instant suit was filed provided that "[a] shareholder may not commence or maintain a derivative proceeding unless the shareholder was a shareholder of the corporation at the time of the act or omission complained

of...." TEX. BUS. CORP. ACT ANN. art. 5.14(B). We also note that the current provisions of the Business Organizations Code were not substantively changed when they were recodified. *See* TEX. BUS. ORGS.CODE ANN. §§ 21.551, 21.552 (Vernon 2010).

tain a derivative action," and concluding that "stockholder" was used "in the sense in which it is used in the common law applicable to proceedings in equity—whatever that sense is")).

■■■ Furthermore, many other jurisdictions recognize the standing of a shareholder of a parent or holding corporation to bring a suit on behalf of a subsidiary corporation. "In a 'double derivative' action, the shareholder is effectively maintaining the derivative action on behalf of the subsidiary, based upon the fact that the parent or holding company has derivative rights to the cause of action possessed by the subsidiary." *Blasband v. Rales,* 971 F.2d 1034, 1043 (3rd Cir.1992) (quoting 13 CHARLES R.P. KEATING, GAIL A. O'GRADNEY, *Fletcher Cyclopedia of Corporations* § 5977, at 240 (rev. ed. 1991)); *Sternberg v. O'Neil,* 550 A.2d 1105, 1107 n. 1 (Del. 1988); *see also Brown v. Tenney,* 125 Ill.2d 348, 126 Ill.Dec. 545, 532 N.E.2d 230, 231 (1988) ("A double derivative suit is one wherein a shareholder of a parent or holding company seeks to enforce a right belonging to a subsidiary of the parent or holding company."). Thus,

> [i]n a double derivative suit, the shareholder of a *holding* company seeks to enforce a right belonging to the subsidiary, and only derivatively to the holding company. This means that the power to bring suit flows directly from the injured subsidiary, but both the subsidiary and the holding company would have to fail, refuse or be unable to redress the injury to the subsidiary.

*Brown,* 126 Ill.Dec. 545, 532 N.E.2d at 233; *see also Pessin v. Chris–Craft Indus., Inc.,* 181 A.D.2d 66, 72, 586 N.Y.S.2d 584 (N.Y.App.Div.1992) ("Where a stockholder controls a subsidiary, and there is no independence between the parent stockholder and the subsidiary ... double derivative standing is conferred on the minority shareholders of the controlling stockholder.").

We sustain Webre's first issue.

## D. Requirement that Webre Make a Written Demand to Maintain Suit

In his second and third issues, Webre argues that, to the extent it did so, the trial court erred in finding he had no standing because he did not make a written demand pursuant to TBCA article 5.14(C) or comply with other procedural aspects of article 5.14. Webre argues that the plain language of article 5.14(C) does not require a written request in suits on behalf of closely held corporations.

■■■ Texas United meets TBCA article 5.14(L)'s definition of a closely held corporation—it has fewer than 35 shareholders and is not listed on any national securities exchange. United Salt is the wholly owned subsidiary of Texas United and is also a closely held corporation. The plain language of article 5.14(L) provides that "[t]he provisions of Sections B through H of this Article are not applicable to a closely held corporation." TEX. BUS. CORP. ACT ANN. art. 5.14(L). Thus, Webre was not required to comply with the written demand requirement of section (C).

We sustain Webre's second and third issues.

### Estoppel

In his fourth issue, Webre argues that he is not estopped from recovery in his suits either by receiving a benefit from the Saltville Acquisition or by changing his position. Webre argues that he has not received any benefit from the Saltville Acquisition because the acquisition has yet to recover its costs, and he argues that he has consistently objected to the transactions complained of in the derivative suit. Webre also argues that estoppel, as an

affirmative defense, is an improper challenge to standing.

The appellees argue that Webre is estopped from maintaining this suit because he cannot accept the benefits of a transaction and simultaneously sue to challenge the transaction. They argue that the Saltville operations have already become profitable.

■■■■ Webre and appellees have presented conflicting evidence and arguments regarding whether the Saltville Acquisition has become profitable, and if it has, the extent to which its profitability has benefited Webre and the other shareholders. Resolution of this dispute is fact-intensive and goes to the heart of the merits of this litigation—i.e., whether either corporation has an ultimate right to recover—and, thus, disposal of this issue as a matter of law through a plea to the jurisdiction is improper. *See Miranda*, 133 S.W.3d at 227–28 (trial court may rule on plea to jurisdiction as matter of law only if relevant evidence is undisputed or fails to raise fact question on jurisdictional issue). Furthermore, quasi-estoppel theories, such as acceptance of benefits, are not proper grounds for attacking subject-matter jurisdiction. *See Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164 (Tex.App.-Houston [14th Dist.] 1991, no writ) (holding that quasi-estoppel refers to certain legal bars, including acceptance of benefits, and precludes party from asserting, to another's disadvantage, right inconsistent with position previously taken); *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex.App.-Fort Worth 2010, no pet.) (quasi-estoppel is affirmative defense); *UL, Inc. v. Pruneda*, No. 01–09–00169–CV, 2010 WL 5060638, at *6–7 (Tex. App.-Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.) (discussing distinction between pleas to jurisdiction and pleas in bar and holding that affirmative defenses on merits that pertain to plaintiff's ultimate right to recover are pleas in bar, not challenges to court's power to hear suit, and proving such affirmative defenses does not entitle defendants to dismissal for lack of jurisdiction).

We sustain Webre's fourth issue.

## Business Judgment Rule

In his fifth issue, Webre argues that the business judgment rule for shareholder derivative actions does not apply to suits brought on behalf of closely held corporations, and, therefore, this ground does not support the trial court's judgment dismissing his suit.

Appellees argue that because Texas law gives control over business acquisitions and corporate lawsuits to the company's board of directors, a dissenting shareholder has no standing to maintain a derivative suit unless he pleads and proves fraud or self-dealing by the board. Appellees argue that Webre did not plead or prove any fraud or self-dealing by United Salt's board of directors. Appellees also argue that Webre lacks authority from the boards of directors of either United Salt or Texas United to file this suit and that his suit is contrary to the vote of the lawful majority actions of both boards of directors and the other shareholders. We address both of appellees' arguments.

■■■ In the first part of his fifth issue, Webre argues the trial court could not dismiss his suit for lack of standing on the basis of his failure to plead and prove fraud. We agree. The notion that a plaintiff is required to prove the merits of his case in order to prove his standing to bring his claims is internally inconsistent with and contrary to Texas law. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443 (holding that standing is implicit in subject-matter jurisdiction and subject-matter jurisdiction

is essential to authority of court to decide case); *Miranda*, 133 S.W.3d at 228 ("We adhere to the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided."). To be entitled to seek judgment on the merits of his case, a plaintiff must have standing; therefore, his standing cannot, as a matter of law, depend on his proof of the merits of his case.

Moreover, Webre alleged that the boards of directors of both Texas United and United Salt made the relevant decisions underlying this case based on misrepresentations, fraud, and breaches of fiduciary duties by the corporations' officers. The appellees argue that this is not the case and that the actions taken by the boards of directors were lawful and based on sound business judgment. Resolution of this dispute is fact-intensive and goes to the heart of the merits of this litigation, and, thus, disposal of this issue as a matter of law would be improper. *See Miranda*, 133 S.W.3d at 227–28 (trial court may only rule on plea to jurisdiction as matter of law if relevant evidence is undisputed or fails to raise fact question on jurisdictional issue).

■■ In the second part of their response to the fifth issue, appellees argue that Webre lacks standing to bring suit on behalf of United Salt and Texas United because his allegations regarding the Saltville Acquisition and his prosecution of this present suit are contrary to the vote of the majority of both boards of directors. They rely on *Pace v. Jordan* and similar cases to support this contention.

In *Pace v. Jordan*, this Court analyzed the trial court's grant of the defendants' "demand-refusal summary judgment motion." 999 S.W.2d 615, 618–19 (Tex.App.-

Houston [1st Dist.] 1999, pet. denied). The *Pace* defendants argued that, under article 5.14, the board of directors' refusal of one shareholder's demand to file suit also barred a second shareholder from bringing a derivative suit. *Id.* In the context of article 5.14's provisions requiring a written demand to the corporation and requiring dismissal of a derivative suit if the demand is rejected under the circumstances outlined in sections (C) through (H) of that article, the *Pace* court noted that a corporation's directors, not its shareholders, have the right to control litigation of corporate causes of action. 999 S.W.2d at 622 (citing Tex. Bus. Corp. Act Ann. arts. 2.02(A)(2), 2.31). "[T]he corporation, through its board of directors, determines whether the chances for successful suit, the costs of maintaining a suit, and other factors militate in favor of instituting such an action." *Id.* at 623 (citing *Cates v. Sparkman*, 73 Tex. 619, 11 S.W. 846, 848 (1889) and *Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 936 (Tex.Civ.App.-Dallas 1979), *writ ref'd n.r.e.*, 601 S.W.2d 940 (Tex.1980) (per curiam)). Thus, the *Pace* court held, "[T]o bring a derivative suit in the right of a corporation, a shareholder must show that the board of directors' refusal to act was governed by something beyond unsound business judgment." *Id.* (citing *Langston v. Eagle Publ'g Co.*, 719 S.W.2d 612, 616 (Tex.App.-Waco 1986, writ ref'd n.r.e.) and *Zauber*, 591 S.W.2d at 936). "Under the business judgment rule, a shareholder cannot institute a derivative suit on the corporation's behalf by merely showing that the board's refusal to act was unwise, inexpedient, negligent, or imprudent." *Id.*

However, as we have already discussed, sections (B) through (H) of article 5.14 do not apply to derivative suits filed on behalf of closely held corporations. *See* Tex. Bus.

Corp. Act Ann. art. 5.14(L).[3] Thus the reasoning in *Pace*, which relied on those provisions, while applicable then and now to suits brought by a shareholder on behalf of a corporation that is not closely held, does not apply to the instant litigation. See *id.*[4]

We sustain Webre's fifth issue.

## Direct Recovery

Finally, in his sixth issue, Webre asserts that the appellees' argument that he is not entitled to a direct recovery under TBCA article 5.14(L) does not justify the trial court's ruling dismissing this case for lack of standing. We agree.

■■■ Article 5.14(L) does not address standing except to provide that the standing requirements of section (B) do not apply to closely held corporations. *See* Tex. Bus. Corp. Act Ann. art. 5.14(L). The portion of article 5.14(L) relevant to this issue states,

(1) The provisions of Sections B through H of this Article are not applicable to a closely held corporation. If justice requires:

(a) a derivative proceeding brought by a shareholder of a closely held corporation may be treated by a court as a direct action brought by the shareholder for his own benefit; and

(b) a recovery in a direct or derivative proceeding by a shareholder may be paid either directly to the plaintiff or to the corporation if necessary to protect the interests of creditors or other shareholders of the corporation.

*Id.* art. 5.14(L)(1). The plain language of article 5.14(L) specifically provides that a derivative action brought by a shareholder of a closely held corporation may be treated by the court either as a derivative suit or, "[i]f justice requires," as a "direct action" brought by the shareholder for his own benefit and that recovery may be paid "either directly to the plaintiff or to the corporation." *Id.*

A determination of whether Webre is entitled to recover directly or whether any recovery ought to be paid to the corporation is not a proper basis for denying Webre's standing to bring this suit because he would have standing to bring it regardless of whether he seeks recovery under subsection (1) or subsection (b) of article 5.14(L)(1).

We sustain Webre's sixth issue.

## Appellees' Alternate Grounds for Affirming the Trial Court's Judgment

Finally, appellees argue that, even if we find that Webre has standing to bring this derivative suit on behalf of Texas United and United Salt, we should affirm the judgment of the trial court on alternative grounds. Specifically, appellees argue that summary judgment in their favor is appropriate because United Salt's board of directors and its sole shareholder ratified the acts of the officers, because the business judgment rule precludes Webre from proving the merits of his allegations, and because estoppel bars this suit as a matter of law due to Webre's acceptance of benefits from the Saltville Acquisition. Appellees also argue that dismissal is proper under their special exceptions, which argued that Webre did not plead or prove

---

3. This law was not changed by subsequent codification. *See* Tex. Bus. Orgs.Code Ann. § 21.563 (Vernon 2010).

4. *See* Tex. Bus. Orgs.Code Ann. § 21.563; *cf. id.* §§ 21.552–.559.

any fraud or wrongdoing by the boards of directors and that Webre is not entitled to an opportunity to replead.

 However, the trial court's order dismissing Wolgel, O'Donnell, and Sneed states only that their "Pleas to the Jurisdiction and Motions to Dismiss are granted due to [Webre's] lack of standing." The trial court's order dismissing Tichenor likewise specifically references his "Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction" as the basis for dismissing Webre's claims. The record does not demonstrate that the trial court ruled on any of the appellees' other motions or grounds for dismissal. Thus, these issues are not presented for our review. *See* Tex.R.App. P. 33.1(a)(2) (requiring, as prerequisite to presenting complaint for appellate review, that "the record must show that . . . the trial court . . . ruled on the request, objection, or motion. . . ."); *In re R.R.*, 26 S.W.3d 569, 574 (Tex.App.-Dallas 2000, orig. proceeding) (holding that where trial court had not ruled on other grounds asserted in motion for protective order, those issues were not ripe for appellate review).

## Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.