**A.G. NICHOLS, Jr., Appellant**

v.

**TSENG HSIANG LIN, Appellee.**

**No. 05–08–01237–CV.**

Court of Appeals of Texas,
Dallas.

April 23, 2009.

Tom Thomas, Beth Ann Blackwood, Thomas & Blackwood, LLP, Dallas, TX, for Appellant.

Michael C. Steindorf, Ben Taylor and Oscar Rey Rodriguez, Fulbright & Jaworski L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion by Justice WRIGHT.

A.G. Nichols, Jr. appeals the trial court's order granting Tseng Hsiang Lin's special appearance. Nichols raises two issues contending the trial court erred in excluding evidence offered in response to the special appearance and granting the special appearance. We overrule Nichols's issues and affirm the trial court's order.

### Background

YJ USA is an Oregon corporation with its principal place of business in Addison, Texas. Yeong Jeou Industrial (YJI) is a Malaysian corporation. Lin is a citizen of Taiwan. He is the treasurer and sole shareholder of YJ USA. Lin is also the chairman and minority shareholder of YJI. YJ USA resells products manufactured by YJI.

In 2005, Nichols negotiated a contract for YJ USA to purchase the assets of JumpKing, a large trampoline manufacturer. In conjunction with the negotiation of this contract, Nichols and YJ USA entered into a consulting agreement providing that Nichols was to receive a two percent commission for five years on future revenues generated by the JumpKing assets. The contract and the consulting agreement were signed by Craig Adams, president of YJ USA. The contract and consulting agreement were negotiated and signed in Texas on May 31, 2005.

Subsequently, in 2006, YJ USA sold the JumpKing assets to YJI. Nichols contends the purpose of this sale between YJ USA and YJI was to defeat his two percent commission under the consulting agreement. On December 22, 2006, Nichols sued YJ USA and YJI in federal court alleging, among other things, breach of contract for failure to pay the two percent commission pursuant to the consulting agreement. The federal lawsuit remains pending.

Nichols filed this lawsuit on November 13, 2007 against Lin, Adams, Sheena Lin, Tracy Lin, YJ USA, Bazoongi Kids,

L.L.C., and Lifestyles USA L.L.C. Nichols asserted a claim for breach of contract through theories of alter ego and single business enterprise. Lin filed a special appearance. After conducting a hearing, the trial court granted Lin's special appearance. This appeal timely followed.

### Exclusion of Evidence

 In his first issue, Nichols contends the trial court erred in excluding from evidence the exhibits attached to his response to Lin's special appearance. We review a trial court's decision to exclude evidence for an abuse of discretion. *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001). To obtain reversal of a judgment based on error in the exclusion of evidence, an appellant must show (1) the trial court did in fact commit error and (2) the error probably resulted in an improper judgment. *Id.* We must uphold the trial court's evidentiary ruling if there is any legitimate basis for doing so, even if that ground was not raised below. *See State Bar of Tex. v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex.1989).

The excluded exhibits consist primarily of deposition testimony from the federal lawsuit. Nichols contends the trial court has jurisdiction over Lin through the contacts of YJ USA and YJI with Texas. In order for these corporate contacts to be attributable to Lin, however, Nichols must first establish an alter ego relationship. Nichols contends that Lin is the alter ego of YJ USA and YJI and YJI is the alter ego of YJ USA. Lin correctly points out that Nichols's petition alleges only that Lin is the alter ego of YJ USA. Nichols contends that the other two alter ego theories were properly raised in his response to the special appearance. For reasons discussed later in this opinion, we need not decide this issue.

 Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability. *Schlueter v. Carey,* 112 S.W.3d 164, 169 (Tex.App.-Fort Worth 2003, pet. denied). Alter ego applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990). The types of evidence a court will consider as proof of an alter ego include: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Mancorp,* 802 S.W.2d at 229. Failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. *See* Tex. Bus. Corp. Act Ann. art. 2.21(A)(3) (Vernon 2003); *Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 714 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). An individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Goldstein v. Mortenson,* 113 S.W.3d 769, 781 (Tex.App.-Austin 2003, no pet.).

 Assuming without deciding that the trial court erred in excluding the exhibits attached to Nichols's response to the special appearance, we review the exhibits to determine whether their exclusion probably caused the rendition of an improper order on the special appearance. Because it is only through the alter ego theory that YJ USA's contacts with Texas can be attributable to Lin, we review the excluded evidence to determine whether it supports

Nichols's theory that Lin is the alter ego of YJ USA and/or YJI.[1]

In his appellate brief, Nichols cites to excluded evidence that he contends supports his alter ego theories. Nichols contends that Adams, YJ USA's president, has "no authority, no office, and is prohibited from signing on the company bank accounts." As support, Nichols cites several references. Sheena Lin's deposition testimony shows, however, that Adams has a home office.[2] Tracy Lin testified in her deposition that only she, her sister, and her father have signatory authority on YJ USA's bank accounts. Nichols also cites to a page from Adams's deposition. Contrary to supporting Nichols's claim, however, Adams confirms his authority by testifying that once the Lin sisters became involved with YJ USA, he has been able to focus more on outside business development and handling important accounts.

Nichols also refers to Tracy Lin's deposition for his contention that Lin "runs and controls YJ USA." The cited-to page, however, shows that YJ USA did not follow corporate formalities and that Lin was a workaholic and talked about business all the time. John Jenkins, a former salesperson for YJ USA, testified that in his opinion YJ USA and YJI operated as if they were one company and that Lin was the dominant player. He also admitted that he had no knowledge of the internal accounting practices of the two companies.

Nichols also states in his brief that it is uncontroverted that YJ USA does not keep separate books. This statement is not supported by citation to the record. Again, without record citation, Nichols claims that YJ USA and YJI have the exact same customers in the United States. In her deposition, however, Sheena Lin confirmed that YJI has sales directly to the United States that do not go through YJ USA. Nichols also points out that YJ USA purchases its goods on credit extended by YJI. YJ USA satisfies its accounts through the sale of goods and not in the usual way of payments made on specified dates. Finally, Nichols points to internal e-mails showing that Lin uses the two companies interchangeably in selling, storing, and handling goods. The cited reference does not support Nichols's statement.

Lastly, Nichols points to deposition testimony regarding the JumpKing website that YJ USA purchased in May of 2005. Adams admitted that it contained some inaccuracies such as YJ USA housing three factories in China. Lin also admitted this was an error. He testified that YJI did not have much knowledge about the website.

The excluded evidence relied upon by Nichols fails to establish that Lin is the alter ego of either YJ USA or YJI. Failure to follow corporate formalities is not a factor in an alter ego determination. See TEX. BUS. CORP. ACT ANN. art. 2.21(A)(3) (Vernon 2003). YJ USA's method of purchasing goods on credit and paying for them through the sale of goods is not evidence that Lin financially backed YJ USA or that it was inadequately capitalized. An employee's opinion that the two

1. A determination that YJI is the alter ego of YJ USA would not provide a basis for personal jurisdiction over Lin unless Lin is also found to be the alter ego of YJI. Accordingly, we limit our analysis to whether Lin is the alter ego of either YJ USA or YJI.

2. We note that on that same page, Sheena Lin testified as follows with regard to Craig Adams's work-related duties:

He takes care of business accounts domestically. And he also is very much involved in product development and in any major decision or going forward business he's involved in as well.

companies acted as one and that Lin acted as the dominant player is not evidence of any of the alter ego factors. Nor is evidence that Lin discussed the business of the two companies all the time. Moreover, the noted website inaccuracies are not relevant to Lin being the alter ego of either company. Significantly, there is no evidence that: (1) Lin paid corporate debts with personal checks; (2) Lin personally promised to financially back YJ USA; (3) Lin diverted corporate profits for his own personal use; (4) YJ USA was inadequately capitalized; or (5) Lin failed to keep corporate and personal assets separate. *See Mancorp,* 802 S.W.2d at 229.

Lin's affidavit was admitted into evidence. In that affidavit, Lin testified that the daily affairs of YJ USA are handled by its president, Craig Adams; its general manager, Sheena Lin; its accountant, Tracy Lin; and about twenty other employees. The funds of YJ USA have always been kept separate from Lin's own personal funds. He has never made any representation that he would financially back YJ USA. He has never diverted any funds of YJ USA to his own personal use. The excluded federal deposition testimony Nichols cites to in his appellate brief, does not dispute Lin's statements in his affidavit.

We conclude the trial court's exclusion of the complained-of evidence did not result in the rendition of an improper order on the special appearance. Accordingly, any error in excluding the evidence was harmless. We overrule Nichols's first issue.

## General Jurisdiction

In his second issue, Nichols contends the trial court erred in granting Lin's special appearance because his contacts with Texas provide a basis for the trial court's exercise of general jurisdiction over him.[3] Lin counters that the fiduciary shield doctrine protects him from the trial court's exercise of general jurisdiction over him. We agree.

■■■ Whether a court has personal jurisdiction over a nonresident defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002). In reviewing a trial court's ruling on a special appearance, we examine all the evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Reiff v. Roy,* 115 S.W.3d 700, 705 (Tex.App.-Dallas 2003, pet. denied). The long-arm statute authorizes Texas courts to exercise jurisdiction over nonresident defendants doing business within the State. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 2008). However, Texas courts may exercise personal jurisdiction over a nonresident defendant only if: (1) the defendant has established minimum contacts with Texas; and (2) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 793. A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.* One exception to that rule arises when the plaintiff asserts the alter ego theory as the basis for personal jurisdiction over the nonresident. *BMC Software,* 83 S.W.3d at

**3.** Nichols does not assert that the trial court has specific jurisdiction over Lin. Thus, our analysis is limited to general jurisdiction.

798; *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 748 (Tex.App.-Dallas 2008, pet. filed) (en banc). The plaintiff must prove that the nonresident is actually the alter ego of the resident corporation. *Id.*

In evaluating the extent of the defendant's contacts with Texas, a nonresident defendant's minimum contacts may result in either general or specific personal jurisdiction. *BMC Software,* 83 S.W.3d at 795–96. General jurisdiction exists if the defendant has established continuous and systematic contacts with Texas. *Id.* at 796. Specific jurisdiction arises when the nonresident defendant has established minimum contacts by purposefully availing itself of the privilege of conducting activities in Texas and its liability arises from or is related to those contacts. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2007). The touchstone of our jurisdictional analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). In determining whether the defendant has purposefully availed itself of the privilege of conducting activities within Texas, we look only to the defendant's contacts and not unilateral contacts of third parties. *Id.* at 784–85. We examine only purposeful contacts of the defendant itself that are not random, isolated, or fortuitous. *Id.* at 785.

As a general rule, jurisdiction over an individual cannot be based upon jurisdiction over a corporation. *Clark v. Noyes,* 871 S.W.2d 508, 518 (Tex.App.-Dal-las 1994, no writ). The fiduciary shield doctrine protects a nonresident corporate officer or employee from a trial court's exercise of general jurisdiction over the individual when all of his contacts with Texas were made on behalf of the employer. *Wolf v. Summers–Wood, L.P.,* 214 S.W.3d 783, 790 (Tex.App.-Dallas 2007, no pet.). Jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Davey v. Shaw,* 225 S.W.3d 843, 856 (Tex.App.-Dallas 2007, no pet.). Thus, to defeat the protection of the fiduciary shield doctrine, the plaintiff must show that the individual was an alter ego of his employer. *Brown v. Gen. Brick Sales Co., Inc.,* 39 S.W.3d 291, 298 (Tex. App.-Fort Worth 2001, no pet.).

Nichols relies upon the corporate contacts Lin has had with Texas as it relates to the business of YJ USA and YJI. We have determined that Nichols did not establish that Lin was the alter ego of either YJ USA or YJI. Thus, the fiduciary shield doctrine protects Lin from the trial court's exercise of general jurisdiction over him. We overrule Nichols's second issue.

We affirm the trial court's order.