**Opinion issued July 24, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00757-CV

————————————

**MARGARET C. RICHARDSON, AS TRUSTEE OF THE H. AND M. RICHARDSON REVOCABLE SURVIVOR'S TRUST, DERIVATIVELY ON BEHALF OF TRANSOCEAN, LTD., Appellant**

**V.**

**STEVEN L. NEWMAN, ADRIAN P. ROSE, W. RICHARD ANDERSON, THOMAS W. CASON, RICHARD L. GEORGE, VICTOR E. GRIJALVA, MARTIN B. MCNAMARA, EDWARD R. MULLER, ROBERT M. SPRAGUE, IAN C. STRACHAN, J. MICHAEL TALBERT, AND JOHN L. WHITMIRE, Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-00623**

---

**O P I N I O N**

This appeal arises from a shareholder derivative action by appellant Margaret Richardson—as trustee of the H. and M. Richardson Revocable Survivor's Trust—against the directors of Transocean Limited, a Swiss corporation. The directors successfully moved to dismiss the case in favor of proceeding in Switzerland, which they propose as a more convenient forum. On appeal, Richardson argues that the trial court abused its discretion in weighing the forum non conveniens factors. Finding no reversible error, we affirm.

## Background

An American subsidiary of Transocean Limited ("Transocean") owned and operated the seagoing drilling rig *Deep Water Horizon*. In April 2010, an explosion at the rig caused a fire that ultimately sank the *Deep Water Horizon* and precipitated a widely reported oil spill in the Gulf of Mexico.

Margaret Richardson, a resident of California, filed this lawsuit derivatively on behalf of Transocean against its directors in state district court in Harris County, Texas. She alleged that the directors' actions in connection with the incident damaged the company by causing it to incur substantial costs, liability, and reputational harm. In her petition, Richardson alleged three causes of action: (1) breach of fiduciary duties of due care, good faith, and loyalty; (2) unjust enrichment to the detriment of Transocean; and (3) waste of corporate assets.

Factually, Richardson alleged that Transocean and its subsidiaries have a documented history of safety, maintenance, and regulatory compliance issues similar to those involved in the *Deep Water Horizon* accident, that the *Deep Water Horizon* itself had a history of safety problems. She contended that the directors knew or should have known about these problems and failed to take adequate corrective action, and also that they made false statements to investors regarding safety and regulatory compliance. Since Transocean is a Swiss company, the parties acknowledge that Swiss law applies to Richardson's claims. *See* TEX. BUS. ORGS. CODE ANN. § 21.562(a) (West 2012) ("In a derivative proceeding brought in the right of a foreign corporation, the matters covered by this subchapter are governed by the laws of the jurisdiction of incorporation of the foreign corporation . . . .").

Transocean's business was founded in 1953 as a Delaware corporation headquartered in Houston. Its business was drilling for oil at sea. The company became a Cayman Islands corporation in 1999, and it then reorganized and reincorporated as a Swiss corporation in 2008, although its stock continues to trade on American exchanges. Transocean Limited is a holding company and does not itself directly conduct exploration for oil. Rather, it owns several corporate subsidiaries around the globe which manage extensive offshore drilling fleets. The American subsidiary that works in the Gulf of Mexico—Transocean, Inc.—is

headquartered in Houston. It employs thousands of people and operates fifteen drilling rigs in the Gulf region.

The directors moved for dismissal based on forum non conveniens, arguing that Switzerland was a more appropriate alternative forum. In particular, they stressed the difficulties the trial court would face in applying Swiss corporate law. After receiving extensive briefing and holding a hearing, the trial court dismissed Richardson's action. She timely filed notice of appeal.

**Analysis**

Richardson argues that the trial court abused its discretion in weighing the forum non conveniens factors to dismiss her case. She emphasizes Transocean's American origins, the substantial presence of its American subsidiary in Houston and the Gulf of Mexico, the American citizenship of a majority of its stockholders, the American residence of several directors, and the significant human, economic, and environmental costs to Texas and the Gulf wrought by the *Deep Water Horizon* accident.

"A director's fiduciary duty runs only to the corporation, not to individual shareholders or even to a majority of the shareholders." *Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Ritchie v. Rupe*, No. 11–0447, 2014 WL 2788335, at *8 (Tex. June 20, 2014). As such, the "right to proceed against an officer or former officer of a corporation

4

for breaching a fiduciary duty owed to the corporation belongs to the corporation itself." *Somers*, 295 S.W.3d at 11. "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Wingate v. Hajdik*, 795 S.W.2d 717, 718 (Tex. 1990).

As a result of these principles, a suit by a shareholder to recover damages from corporate directors who breach their fiduciary duties ordinarily must be pursued on behalf of the corporation. *See, e.g.*, *In re Schmitz*, 285 S.W.3d 451, 452 (Tex. 2009) (explaining that shareholder derivative suits are nominally brought on a corporation's behalf). In other words, a shareholder like Richardson who brings a derivative suit does not rely on her own claims but steps into the shoes of the corporation and asserts the corporation's claims for damages against the directors. *See In re Crown Castle Int'l Corp.*, 247 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (explaining that in a shareholder derivative suit, "the individual shareholder steps into the shoes of the corporation and usurps the board of directors' authority to decide whether to pursue the corporation's claims").

The Supreme Court of Texas distinguishes between a statutory and a common-law species of forum non conveniens. *See Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010) (per curiam). The relevant

statutory provision, TEX. CIV. PRAC. & REM. CODE ANN. § 71.051 (West 2008), applies to personal injury and wrongful death actions, and the parties did not reference it in either the trial court or their appellate briefs. Accordingly, we confine our analysis to the common law.

"The 'central focus of the *forum non conveniens* inquiry is convenience.'" *Quixtar*, 315 S.W.3d at 33 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S. Ct. 252, 262 (1981)). The doctrine allows a court to dismiss a claim based on practical considerations affecting litigants, witnesses, and the justice system. *See id.* at 34–35. Even though a court has jurisdiction and venue, it still may dismiss based on forum non conveniens. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 842 (1947); *In re Smith Barney, Inc.*, 975 S.W.2d 593, 596 (Tex. 1998).

In deciding motions to dismiss based upon forum non conveniens, Texas courts follow the analysis of the United States Supreme Court in *Gulf Oil*. *See Quixtar*, 315 S.W.3d at 33–34 ("[W]e regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases."); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677–78 (Tex. 2007) (plurality op.); *Benz Grp. v. Barreto*, 404 S.W.3d 92, 96 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Before a case may be dismissed on forum non conveniens grounds, it must be shown that an adequate alternative forum is available to adjudicate it.

6

*Piper Aircraft*, 454 U.S. at 254 n.22, 102 S. Ct. at 265; *Pirelli Tire*, 247 S.W.3d at 677. There is no dispute in this case that Switzerland is an available and adequate alternative forum.

The heart of the *Gulf Oil* analysis is the set of private and public interest factors that courts are instructed to weigh in exercising their discretion. The parties dispute the application of these factors to the present case. "A defendant seeking forum non conveniens dismissal 'ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'" *Quixtar*, 315 S.W.3d at 31 (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1191 (2007)). However, courts afford substantially less deference to the forum choice of a non-resident plaintiff. *Id.* Likewise, the ordinary reasons for giving deference to the forum choice of a plaintiff—that she and the evidence in her control will at least presumably be convenient to the court—are weakened in the context of shareholder derivative suits in which the plaintiff sues on behalf of a scattered class of shareholders to vindicate the interests of the corporation and is likely to have little to contribute in the way of proof herself. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525–26, 67 S. Ct. 828, 832 (1947); *In re BP S'holder Derivative Litig.*, No. 4:10–cv–3447, 2011 WL 4345209, at *4 (S.D. Tex. Sept. 15, 2011); *see generally Quixtar*, 315 S.W.3d at 32.

We will reverse a trial court's forum non conveniens determination only if the record shows a clear abuse of discretion. *See Quixtar*, 315 S.W.3d at 31. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Id.* If the trial court has considered all the relevant public and private interest factors, and its balance of the factors is a reasonable one, its decision deserves substantial deference. *Id.* As such, it is not appropriate for us to conduct a de novo review by reweighing each of the factors. *See id.* at 35 (explaining that the court of appeals erred when it "mechanically re-weighed the Gulf Oil factors under the scope of an excessive burden of proof"); *SES Prods., Inc. v. Aroma Classique, LLC*, No. 01–12–00219–CV, 2013 WL 2456797, at *4 (Tex. App.—Houston [1st Dist.] June 6, 2013, no pet.) (mem. op.).

## I.    The private-interest factors

The canonical private-interest factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the possibility of view of premises, if view would be appropriate to the action; (4) enforceability of a judgment once obtained; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508, 67 S. Ct. at 843; *accord Quixtar*, 315 S.W.3d at 33. The parties agree that the third private-interest factor—the possibility of a view of the premises—is not

8

relevant. While they agree that the other factors are applicable, they disagree as to how the factors weigh in this case.

## A.   Accessibility of evidence and witnesses

Richardson argues that "Texas is the focal point of the litigation in terms of the defendants and evidence." She points out that five of the directors live in Texas, three in other states of this nation, one in Canada, and three in Europe. Only one of the Europeans resides in Switzerland. Richardson suggests that travel to Switzerland would burden employees of Transocean's American subsidiary who live and work around the Gulf. Similarly, documents pertaining to drilling operations conducted in the Gulf are likely to be found near where they are generated. In summary, Richardson contends that factors one and two—the relative ease of access to sources of proof and the availability of witnesses—favor litigation in Houston. She argues that a "thorough review of whether Defendants breached their fiduciary duties to the Company requires an examination of more than just the Board meeting minutes, which are often perfunctory and generalized." Instead, Richardson claims that "it is important to analyze what is happening in the Company's operations, not just inside the Company's boardroom."

Richardson's argument, that although Transocean is a Swiss corporation, its subsidiary has many employees on the ground in Texas and vessels on the waters of the Gulf, raises a valid consideration. The United States Supreme Court

propounded in *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S. Ct. 828 (1947):

> [T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice. Under modern conditions corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state. Place of corporate domicile in such circumstances might be entitled to little consideration under the doctrine of forum non conveniens, which resists formalization and looks to the realities that make for doing justice.

330 U.S. at 527–28, 67 S. Ct. at 833. The Court emphasized: "There is no rule of law . . . which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation." *Id.* at 527, 67 S. Ct. at 833.

Nonetheless, Richardson's reliance upon the availability of documents and witnesses is not congruent with the nature of her actual claims. The petition sought relief based upon allegations that the directors knew or should have known about safety problems with the *Deep Water Horizon*, failed to take appropriate action, and made related false statements. Though Richardson deprecates the importance of "Board meeting minutes" to her claim, it is ultimately the actions and knowledge of the directors that were placed in issue by her lawsuit. With the exception of appellee Steven Newman, who as Transocean's CEO frequently visits oil rigs and personally traveled to the Gulf in response to the *Deep Water Horizon*

accident, Richardson has not shown why there would be more evidence of the directors' activities and knowledge in Houston than in Switzerland. For example, Richardson does not contend that the directors met in Houston or that, with the exception of Newman, they actively supervised the American subsidiary's Houston headquarters and its physical operations in the Gulf of Mexico.

Indeed, the directors presented evidence that their work for Transocean predominantly took place in Switzerland. Specifically, they attached to their motion to dismiss the affidavit of Transocean's corporate secretary and associate general counsel, who works in Zug, Switzerland. He affirmed that Transocean has its corporate headquarters in Switzerland and does not maintain an office in the United States. Based on company records, the secretary listed the varied international residences of the directors. He also averred that meetings of the board and its committees are "generally" held in Switzerland, where the records of such meetings are maintained. Because Richardson's claim concerned the internal governance of Transocean, the trial court reasonably could have concluded that any evidence available in Switzerland as to what the directors knew, said, and did about the alleged safety problems was more significant than any direct evidence of the problems themselves that one would expect to find near the physical operations in the Gulf.

With respect to attendance at court by the directors themselves, Richardson argued: "Litigating in Switzerland would require *eleven* witnesses to travel to Switzerland, while litigating in Texas would require only *seven* witnesses to travel to Texas; critically, three of those seven would be traveling from nearby in the United States, and one would be traveling from Canada. In comparison, litigating in Switzerland would require international travel for *eleven* witnesses."

The burden of traveling to Switzerland should not be overstated in light of the directors' duty and demonstrated willingness to travel there regularly for Transocean business. Moreover, should some witnesses or defendants prove unwilling to attend proceedings in Houston, the extent of a Texas court's jurisdiction and the territorial limits to the effective power of its orders could ultimately prove to be greater geographic obstacles than the inconveniences of travel. *See generally CSR Ltd. v. Link*, 925 S.W.2d 591, 594–95 (Tex. 1996) (affirming that the scope of Texas courts' personal jurisdiction over foreign defendants is bounded by federal due process considerations). As the directors emphasize, several of their number have not consented to jurisdiction in Texas. Moreover, as a practical matter, it ultimately may be impossible to compel the attendance at court of those living in foreign countries, even if jurisdiction over them were established. *See In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 926 (Tex. 2010) (per curiam) (explaining, in statutory forum non conveniens case, that

12

compulsory process would be unavailable for witnesses living in other countries); *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986) ("No state or nation can demand that its laws have effect beyond the limits of its sovereignty."). Although Richardson argues that the trial court would have personal jurisdiction over all of the directors based on their "purposeful availment of the benefits of conducting business in Texas through [Transocean's] subsidiaries," her position ignores the well-established principle that contacts sufficient to establish personal jurisdiction over a corporation cannot be imputed to its directors in their individual capacities. *See, e.g.*, *Siskind v. Villa Found. for Educ.*, 642 S.W.2d 434, 437–38 (Tex. 1982) (acts of corporation could not be imputed to its employees so as to render them amenable to suit in Texas); *Walz v. Martinez*, 307 S.W.3d 374, 382 (Tex. App.—San Antonio 2009, no pet.) ("As a general rule, jurisdiction over an individual cannot be based upon jurisdiction over a corporation."); *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.) (same).

In their motion to dismiss, the directors argued that discovery under Texas procedures directed toward evidence in Switzerland would be complicated by provisions of Swiss law forbidding the exercise of governmental functions on behalf of foreign governments on Swiss soil. The directors relied on an opinion by Peter Forstmoser, a Swiss law professor, who recounted past instances when Americans conducting discovery were targeted by Swiss law enforcement. In her

13

brief, Richardson responds to these concerns obliquely, arguing that if discovery in Switzerland "were as impossible as Defendant's expert suggested [then] no case could ever be litigated in the United States that required the application of Swiss law and discovery of Swiss documents." However, the trial court could have reasonably considered legal barriers to conducting discovery in Switzerland in weighing the *Gulf Oil* factors without treating those barriers as categorical bars to a suit involving discovery in Switzerland.

## B.    Enforceability of a Texas judgment

Richardson argues that the fourth private-interest factor, enforceability of a potential judgment, supports litigating her case in Texas. She repeats her argument that a Texas court would have jurisdiction over all of the directors because of Transocean's contacts with Texas. She further contends that Newman owns property in Texas and emphasizes the Texas residence of five of the directors. Finally, she identifies statutes and prior cases attesting to the enforceability of a Texas judgment in the states and countries where the other directors reside.

As we previously explained, Richardson's assumption that all of the directors would be subject to the jurisdiction of Texas courts based simply on the contacts of Transocean with the state is flawed. *See, e.g.*, *Siskind*, 642 S.W.2d at 437–38; *Walz*, 307 S.W.3d at 382; *Nichols*, 282 S.W.3d at 750. A judgment entered without personal jurisdiction over one of the directors would be subject to

14

collateral attack and could prove unenforceable against him. *See, e.g., PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012); *Coleman v. Gear*, 344 So. 2d 121, 123 (La. Ct. App. 1977) (declining to enforce Texas judgment when Texas court had lacked personal jurisdiction). Nonetheless, the fact that five of the directors are Texas residents diminishes these concerns significantly. As Richardson alleges wrongdoing by the directors in collective terms—including allegations of civil conspiracy—if she were to prevail, the directors likely would be jointly and severally liable. *See generally Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979) (explaining that finding of civil conspiracy entails that conspirators are jointly and severally liable); *In re Emerging Commc'ns, Inc. S'holders Litig.*, No. Civ. A. 16415, 2004 WL 1305745, at \*43 (Del. Ch. May 3, 2004) (holding directors who breached their fiduciary duties jointly and severally liable); *Holloway v. Int'l Bankers Life Ins. Co.*, 354 S.W.2d 198, 203 (Tex. Civ. App.—Fort Worth 1962) ("[W]here two or more officers join or participate in a wrongful act to the detriment of a corporation they will be held jointly and severally liable . . . ."), *rev'd on other grounds*, 368 S.W.2d 567 (Tex. 1963); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 15 (2000) ("When persons are liable because they acted in concert, all persons are jointly and severally liable for the share of comparative responsibility assigned to each person engaged in concerted activity."). Enforcement of the entire judgment could thus be

15

sought from the five Texas directors with respect to whom jurisdiction is clear. *See Landers v. E. Tex. Salt Water Disposal Co.*, 151 Tex. 251, 256, 248 S.W.2d 731, 734 (1952) (recognizing that wrongdoer held jointly and severally liable is liable for the entire amount of damages); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 10. As such, a reasonable balance of the private-interest factors in this case would assign little weight to the enforceability of a judgment as a consideration against litigating in Texas.

**C.      Balance of private-interest factors**

In order for Richardson to prevail in this appeal, she must show that the trial court abused its discretion and failed to strike a reasonable balance when it weighed the *Gulf Oil* factors. *See Quixtar*, 315 S.W.3d at 31. As such, when considering Richardson's arguments, it is not our task to reevaluate but rather to decide whether the trial court's assessment was a reasonable one. *See id.* at 35. In deciding whether the trial court's balancing of the factors was reasonable, we must bear in mind that the deference owed to Richardson's decision to litigate in Texas was reduced in light of the nature of her claims and her California domicile (which is also the home of her trust). *See Koster*, 330 U.S. at 525–26, 67 S. Ct. at 832; *Quixtar*, 315 S.W.3d at 31. Though Richardson's choice of Texas courts was still entitled to some deference and the directors were required to show that the balance of the *Gulf Oil* factors favored litigation in Switzerland, the factors need not have

16

"strongly favored" the alternative forum, as is the case when a Texas plaintiff chooses to litigate her personal, non-derivative claims in a Texas court. *See Quixtar*, 315 S.W.3d at 31–32 (clarifying that a defendant's "heavy burden" applies with less force when the plaintiff is a nonresident but "this does not mean that a plaintiff's choice of forum deserves no deference").

For the reasons that we have discussed, we are not persuaded that the trial court abused its discretion in weighing the private-interest factors. While certain facts—such as the American residence of several defendants and the extensive operations of Transocean's American subsidiary in Texas and the Gulf—may weigh in favor of a Texas forum, the trial court reasonably could have concluded based on other facts presented to it—most notably that this case concerns acts of corporate governance by the board of directors of a Swiss corporation that holds its meetings in Switzerland—that the balance of the private-interest factors favored litigation in Switzerland.

## II.   The public-interest factors

The public-interest factors are: (1) administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin; (2) the burden of jury duty that ought not to be imposed upon the people of a community with no relation to the litigation; (3) local interest in having localized controversies decided at home; and (4) avoiding conflicts-of-law issues. *Gulf Oil*,

330 U.S. at 508–09; *accord Quixtar*, 315 S.W.3d at 33–34. Richardson argues that the "public interest factors do not strongly favor dismissal because the difficulties of applying Swiss law are outweighed by the interests of Texas residents." She argues that Transocean's connections to Switzerland are "primarily tenuous corporate fictions" while, in contrast, the activities of its subsidiary affect thousands of Texans.

## A.      Local interest and difficulty of administration

Richardson contends that the first, second, and third public-interest factors—administrative difficulties for courts, the burden of jury duty, and the local interest in having localized controversies decided at home—weigh heavily in favor of litigation in Texas. She emphasizes that the *Deep Water Horizon* accident claimed the lives of eleven Americans, including two Texans, and that Transocean's American subsidiary employs many people at its Houston headquarters. She also maintains that more than half of Transocean's stock is owned by Americans.

Richardson's argument that the *Deep Water Horizon* accident harmed Texas and Texans is misplaced. Richardson is neither bringing a claim for Texans who suffered personal injuries as a result of the oil spill nor is she representing the interests of the Houston employees of Transocean's subsidiary. Rather, she is bringing a claim in which she purports to represent the interests of Transocean and its shareholders. The torts of which she complains are breaches of fiduciary duties

owed to the company by the directors. Contrary to Richardson's assertions, Texas and the potential jurors of Harris County have no special interest in enforcing fiduciary duties owed to a foreign corporation by its directors. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645–46, 102 S. Ct. 2629, 2642 (1982) (discussing law assigning responsibility for regulating company's internal affairs to its state of incorporation). In contrast, Switzerland and its courts presumably have an interest in regulating the affairs of Swiss corporations. *See id.* The United States Supreme Court, while cautioning against blindly affording preclusive effect to the "internal affairs rule," accepted that the fact that a suit concerns the internal affairs of a foreign corporation is a consideration typically favoring dismissal. *See Koster*, 330 U.S. at 527–28, 67 S. Ct. at 833–34; *see also Scottish Air Int'l, Inc. v. British Caledonian Grp.*, 81 F.3d 1224, 1234 (2d Cir. 1996). Texas courts have agreed that this consideration favors dismissal. *In re SXP Analytics, LLC*, No. 14–11–01039–CV, 2012 WL 1357696, at *5 (Tex. App.—Houston [14th Dist.] Apr. 13, 2012, orig. proceeding) (mem. op.) (per curiam) (following the discussion of internal affairs in *Koster*); *Garrett v. Phillips Petrol. Corp.*, 218 S.W.2d 238, 240 (Tex. Civ. App.—Amarillo 1949, writ dism'd).

Richardson argues that our decision should follow that of the Second Circuit in *DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002). In *DiRienzo*, the plaintiffs brought a securities fraud action in the federal district court for the

19

Southern District of New York against a Canadian corporation. 294 F.3d at 24–25. The district court dismissed on forum non conveniens grounds. *Id.* Like Transocean, the defendant in *DiRienzo* operated subsidiaries in the United States, from which it obtained substantial revenues. *Id.* at 25. In a further similarity with Transocean, that company's stock was traded on American exchanges and was owned by Americans. *Id.* at 31–32. The Second Circuit reversed the district court's dismissal, finding that it had incorrectly weighed the forum non conveniens factors. *Id.* at 33–34.

*DiRienzo*, however, is readily distinguishable from the case before us. Whereas Richardson has launched a shareholder derivative suit, the plaintiffs in *DiRienzo* brought personal, non-derivative claims for violations of American securities laws. *Id.* at 24–25. The Second Circuit relied heavily on the fact that the plaintiffs were seeking to enforce American securities laws in a judicial district where those securities were traded on a public exchange. *See id.* at 31–33. In contrast, Richardson is seeking to vindicate the interests of Transocean itself under Swiss corporate law; she is not seeking recovery under American securities laws or bringing suit in a district hosting an exchange where Transocean's stock is publicly traded.

The United States Supreme Court has acknowledged the significant administrative burdens that accompany shareholder derivative suits and the

20

relevance of those burdens to deciding questions of forum non conveniens. The

*Koster* Court wrote:

> To entertain such an action places the forum in a position of responsibility toward the whole class which the plaintiff assumes to represent. To prevent collusive settlements and abuses, the Court must approve dismissal or compromise and often must give notice to the other potential plaintiffs, in this case to the other members and policy holders in whose behalf plaintiff sues and who have a right to be heard on the propriety of settlement. It also takes on the troublesome business of fixing allowances to counsel and accountants for the plaintiff payable out of the defendant corporation's recovery against other defendants. Thus, such a litigation brings to the court more than an ordinary task of adjudication; it brings a task of administration; and what forum is appropriate for such a task may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself.

330 U.S. at 525–26, 67 S. Ct. at 832 (footnotes and citations omitted). Here, although Richardson showed that a majority of Transocean's stock is held by Americans, she did not posit that these stockholders had any peculiar relationship with Texas or Harris County. By way of contrast, although they are otherwise scattered across the globe, Transocean shareholders who opted to purchase stock in a Swiss company on the New York or Swiss exchange where it is traded, could be said to have a special relationship with courts in those jurisdictions.

**B.    Conflicts-of-law issues**

Richardson agrees with the directors that Swiss law would apply to her case. *See* TEX. BUS. ORGS. CODE ANN. § 21.562(a). She argues that it is nevertheless

21

within the trial court's capability to ascertain Swiss law in this case and that conflicts of law cannot, standing alone, dictate dismissal.

We agree that the need to apply foreign law alone cannot mandate dismissal, *see Piper Aircraft*, 454 U.S. at 260, 102 S. Ct. at 268 n.29, but it is still an appropriate factor in the trial court's forum non conveniens analysis. *See Gulf Oil*, 330 U.S. at 509, 67 S. Ct. at 843. The directors' expert on Swiss law, Professor Forstmoser, identified several obstacles to a Texas court correctly finding and applying Swiss law. Richardson's brief does not address these problems to show why the trial court could not have reasonably given them substantial weight along with other public interest factors favoring dismissal. *Cf. Vinmar Trade Fin., Ltd. v. Util. Trailers de Mex., S.A. de C.V.*, 336 S.W.3d 664, 679 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting that the mere possibility that foreign law may ultimately apply has been treated a factor militating in favor of forum non conveniens dismissal).

As Professor Forstmoser explained, Switzerland is a civil-law jurisdiction with a code-based jurisprudence. Since it is a trilingual nation, every law is written in French, German, and Italian. The evidence presented to the trial court indicated that each language is considered authoritative, and a "careful interpretation of Swiss law may sometimes require consideration of the text in the three languages which may well differ in details." As in other civil-law nations, difficult questions

22

of law are often decided by reference to scholarly articles. Past decisions of tribunals, while not without influence, lack the controlling force they possess in Texas. *See generally Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 128–29 (La. 2000) (discussing role of statute, precedent, and custom in civil-law system of Louisiana).

The professor identified a number of uncertainties in pertinent sectors of Swiss corporate law. While Switzerland recognizes shareholder derivative claims, there are few past decisions involving companies in good standing. Rather, most litigation has involved claims by creditors against insolvent or failing organizations. The professor was aware of only "a handful" of cases against publicly traded companies.

Professor Forstmoser recognized that directors of a Swiss company have a duty of care that may encompass Richardson's safety claims but cautioned that there have been no prior decisions construing the duty in the context of physical, operational safety. Instead, past claims have dealt with mismanagement of financial risks, such as failing to report overindebtedness to a judge.

Acknowledging that Richardson pleaded a diminution in Transocean's market value, the professor opined that, with some exceptions, damages generally cannot be recovered in a Swiss derivative suit for mere reductions in share price. Forstmoser also explained that Richardson's generalized accusations about the

behavior of the directors as a group would be inadequate under Swiss law. Before a Swiss director may be held liable, a causal connection between his acts or omissions and foreseeable harms suffered by the corporation must be established.

The professor's opinion also describes a doctrine in Swiss corporate law, the *decharge*, which allows the shareholders at a general meeting to release the directors from personal liability for actions in the previous year. In order for the release to cover specific conduct, the relevant facts must have been disclosed or widely known among the public. Shareholders who do not approve are afforded six months to file their claims. The record suggests there are close questions of Swiss law involved in determining which facts are considered disclosed or publicly known. The record does not disclose whether the shareholders of Transocean granted *decharge* during the relevant period.

In light of Professor Forstmoser's opinion, the record before the trial court did not merely disclose that a foreign country's law would apply, but it identified several specific challenges to the prospect of applying Swiss corporate law in Texas proceedings. The trial court reasonably could have concluded that problems in applying foreign law militated strongly in favor of dismissal under the public interest factors. *See Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) ("Swiss law appears to apply . . . . This necessitates the introduction of inevitably conflicting expert evidence on numerous questions of Swiss law, and it creates the

uncertain and time-consuming task of resolving such questions by an American judge unversed in civil law tradition."); *McNutt v. Teledyne Indus., Inc.*, 693 S.W.2d 666, 668 (Tex. App.—Dallas 1985, writ dism'd) ("[T]he best of forums, in the sense of practiced skill at the applicable law and fullest availability of evidence and witnesses, will likely produce the best justice.").

## C.    Balance of public-interest factors

We conclude that the appellate record does not show that the trial court abused its discretion in weighing the public-interest factors. Given that Richardson's suit concerns the internal affairs of a Swiss corporation, that she failed to show that the company's stockholders have a particular connection with Texas, the administrative difficulties of managing a shareholder derivative suit, and the challenges of applying Swiss law in a complex, unsettled area, the trial court could have reasonably concluded that the public interest factors favored litigation in Switzerland. As was the case when it weighed the private interest factors, the trial court owed less deference to the choice of forum of a non-resident plaintiff bringing a shareholder derivative claim.

## Conclusion

We affirm the judgment of the trial court.


                              Michael Massengale
                              Justice

Panel consists of Chief Justice Radack, Justice Massengale, and Justice Huddle.