Terry NEFF and Iron Workers Mid-South Pension Fund, DerivatIvely on behalf of Weatherford International, Ltd., Appellants

v.

Nicholas F. BRADY, David J. Butters, William E. Macaulay, Robert B. Millard, Robert K. Moses, Jr., Robert A. Rayne, Bernard J. Duroc-Danner, Burt M. Martin, and Weatherford International, Ltd., a Swiss Corporation, Appellees

### NO. 01-15-00544-CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 29, 2017

Joe Kendall, Jamie J. McKey, KENDALL LAW GROUP, LLP, 3232 McKinney Avenue, Suite 700, Dallas, TX 75204, George C. Aguilar, ROBBINS ARROYO LLP, 600 B Street, Suite 1900, San Diego, CA 92101, for Appellants.

Noelle M. Reed, Wallis M. Hampton, Jason E. Beesinger, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, 1000 Louisiana, Suite 6800, Houston, Texas 77002, N. Scott Fletcher, Elizabeth G. Myers, JONES DAY, 717 Texas Street, Suite 3300, Houston, Texas 77002, Thomas F. Allen, Jr., Margaret I. Lyle, JONES DAY, 2727 North Harwood Street, Dallas, Texas 75201-1515, Rebecca N. Brandt, LATHAM & WATKINS LLP, 811 Main Street, Suite 3700, Houston, Texas 77002, Colleen C. Smith (pro hac vice), LATHAM & WATKINS LLP, 12670 High Bluff Drive, San Diego, California 92130, Peter A. Wald (pro hac vice), LATHAM & WATKINS LLP, 505 Montgomery Street, Suite 2000, San Francisco, California 94111, Kevin H. Metz (pro hac vice), Marissa Boynton (pro hac vice), LATHAM & WATKINS LLP, 555 Eleventh Street, NW Suite 1000, Washington, D.C. 20004-1304, for Appellees.

Panel consists of Justices Jennings, Keyes, and Brown.

## OPINION

Terry Jennings, Justice

Appellants, Terry Neff and Iron Workers Mid-South Pension Fund, derivatively on behalf of nominal defendant, Weatherford International, Ltd., a Swiss Corporation ("Weatherford"), challenge the trial court's orders dismissing their claims for breach of fiduciary duty, abuse of control, and corporate waste against appellees, Nicholas F. Brady, David J. Butters, William E. Macaulay, Robert B. Millard, Robert K. Moses, Jr., Robert A. Rayne, Bernard J. Duroc-Danner (collectively, "the directors"), Burt M. Martin, and Weatherford. In four issues, appellants contend that the trial court erred in granting the pleas to the jurisdiction and special exceptions of the directors and Weatherford, granting the special exceptions of Martin, and granting the special appearances of Brady, Butters, Macaulay, Millard, Moses, and Rayne.

We affirm in part and reverse and remand in part.

## Background

In their Consolidated Petition,[1] appellants allege that Weatherford is a global oil and gas services company that is head-

---

1. Originally, two other shareholders, Ken Hess and Mona Rosner, each filed derivative actions nearly identical to that of Neff. After the trial court ordered the suits consolidated under the instant suit, Hess and Rosner dismissed their claims.

quartered in Houston, is publicly-traded on the New York Stock Exchange, and has market presence in over 100 countries in the Middle East, Asia, Latin America, and Africa. As an issuer of publicly-traded securities, Weatherford's business and operations are subject to the Foreign Corrupt Practices Act ("FCPA"), which prohibits companies from making improper payments, such as bribes or kickbacks, to foreign officials in order to obtain or retain business.[2] To prevent such illicit payments, the FCPA requires companies to establish and maintain a system of accounting controls.[3] According to appellants, some of the countries in which Weatherford conducts its operations present higher risks for corruption because they have cultures in which requests for improper payments are not discouraged and have less-developed regulatory structures. Notwithstanding, the directors failed to implement certain controls, procedures, and processes necessary to comply with the FCPA.

Appellants further allege that, from 2002 to 2011, Weatherford representatives authorized or paid bribes to foreign officials in Africa and the Middle East in order to obtain or retain business. They paid kickbacks to foreign officials in Iraq to obtain United Nations Oil-for-Food contracts. And, from 2002 to 2007, they violated United States sanctions and export laws by conducting business in and with Cuba, Iran, Sudan, and Syria. Although Weatherford's schemes boosted its revenues by $118 million and its profits by $89 million, they exposed Weatherford to substantial penalties and losses for violations of the FCPA. In 2007, the United States Department of Justice ("DOJ") and the United States Securities and Exchange Commission ("SEC") launched an investigation into Weatherford's practices and compliance with the FCPA. While the governmental investigations were pending, Weatherford publicly announced that it, through its own internal investigations, had discovered potential violations of United States law in connection with its joint venture in Angola.

From 2002 to February 2009, Weatherford was incorporated in the British Overseas Territory of Bermuda ("Weatherford Bermuda"). On February 26, 2009, Weatherford created a new corporate entity and re-domesticated to Switzerland ("Weatherford Switzerland"), where it presently remains. Weatherford Switzerland became the parent of Weatherford Bermuda, a wholly-owned subsidiary. Brady, Butters, Macaulay, Millard, Moses, Rayne, and Duroc-Danner served as directors of Weatherford Bermuda and then as directors of Weatherford Switzerland. And Martin served as Weatherford Bermuda's senior vice president and general counsel.

On March 1, 2010, Weatherford disclosed to its shareholders that the governmental investigations into its possible violations of the FCPA could adversely affect its operations and financial condition. Thereafter, the price of Weatherford's shares began to decline. On March 25, 2010, Neff made his initial purchase of shares in Weatherford. On May 3, 2010, Weatherford disclosed to its shareholders that it would likely be subject to penalties imposed by the DOJ and SEC. On July 10, 2010, Neff filed the instant suit. And, in December 2010, Iron Workers Mid-South Pension Fund made its initial purchase of shares in Weatherford.

In 2013, the DOJ and SEC concluded that Weatherford had committed several FCPA violations. For instance, from 2002 to 2011, Weatherford authorized bribes to

---

**2.** 15 U.S.C. § 78dd-1, *et seq.*

**3.** *Id.* § 78m.

obtain or retain business; engaged in commercial transactions with sanctioned countries in violation of United States sanctions and export control laws; failed to implement sufficient accounting controls to detect and prevent payments of bribes and improper sales to sanctioned countries; engaged in transactions that were incorrectly described in its books and records; and created false accounting records. During the DOJ and SEC investigations, Weatherford Switzerland incurred over $169 million in FCPA-related expenses. And it subsequently resolved the enforcement actions, in part, by agreeing to pay $252 million in fines and penalties.

On behalf of Weatherford, appellants assert that the directors breached their fiduciary duties, abused their control, and committed corporate waste. The directors were aware that Weatherford's international business operations required compliance with the FCPA, and they had a fiduciary duty to Weatherford to implement and maintain accounting, financial, and internal controls and systems to ensure such compliance. And the SEC concluded that the directors failed to implement and maintain internal accounting controls for compliance with the FCPA's books and records provisions. Further, the directors breached their fiduciary duties by making false and misleading statements in Weatherford's annual reports about its revenues, profits, and its FCPA compliance. They caused Weatherford to issue false and misleading proxy statements to Weatherford shareholders. And, their conduct constituted an abuse of their control and influence over Weatherford and a waste of its corporate assets.

Appellants further assert that the directors' acts and omissions caused Weatherford to be "severely injured and damaged." In addition to paying millions of dollars in fines, penalties, and costs, Weatherford will incur millions of dollars more in costs from the appointment of a Corporate Monitor and the implementation of various remedial measures. Thus, appellants seek actual and exemplary damages on behalf of Weatherford.

Weatherford, as nominal defendant, filed a plea to the jurisdiction, in which the directors and Martin joined. They argued that appellants lack standing to bring derivative claims on behalf of Weatherford for the acts and omissions of the directors of Weatherford Bermuda that pre-date Weatherford's February 26, 2009 re-domestication to Switzerland because such claims are governed by the laws of Bermuda, which prohibit shareholder-derivative claims, absent narrow exceptions not applicable here. They also assert that neither the laws of Bermuda nor Switzerland recognize appellants' claims, which are double-derivative.[4]

Weatherford also filed special exceptions, in which the directors and Martin joined, challenging appellants' claims concerning the directors' acts and omissions that occurred from 2009 to 2011. Appellees argued that appellants' Consolidated Petition does not provide fair notice to allow them to prepare a defense because appellants failed to plead particularized facts. Appellees also challenged appellants' claims on the ground that Weatherford's shareholders, as authorized under Swiss law, have released the directors from all

---

4. A double-derivative suit is based upon an injury suffered by a parent corporation, in which the shareholder does have an interest, as a result of an injury to a subsidiary. *See In re Bear Stearns Cos., Inc. Sec., Deriv-* *ative, & ERISA Litig.*, 763 F.Supp.2d 423, 538 (S.D.N.Y. 2011); *see Webre v. Sneed*, 358 S.W.3d 322, 334 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 465 S.W.3d 169 (Tex. 2015).

liability for their conduct from 2009 to 2011.

In support of their pleas and special exceptions, appellees filed the affidavit of their expert, Dr. Alexander Vogel, LL.M. In his affidavit, Vogel testified that he is a partner in the law firm of Meyerlustenberger Lachenal, which is a commercial law firm comprised of over 80 lawyers across Zurich, Geneva, Zug, and Lausanne. He is the head of the firm's corporate and finance departments, and he advises Swiss and international companies on all aspects of Swiss and international commercial law. Vogel holds a doctoral degree from the University of St. Gallen, Switzerland, and a master of laws degree from Northwestern University School of Law. He is admitted to the bar in Switzerland and in New York. And, he has authored several publications on Swiss corporate structure and liability.

Vogel explained that in February 2009, Weatherford underwent a re-domestication process, i.e., the place of incorporation of the parent company changed from Bermuda to Switzerland. Prior to its re-domestication, Weatherford was incorporated under the laws of Bermuda and had its registered office in Bermuda. However, Weatherford did not simply move its registered seat from Bermuda to Switzerland. Under the re-domestication, Weatherford formed a new corporation, with its registered office in Switzerland, and it "acquired all shares in Weatherford Bermuda from the (public) shareholders of Weatherford Bermuda." Thus, the re-domestication was not conducted under the most common scheme under Swiss law. As a result, from the perspective of Swiss law, Weatherford Switzerland is not the legal successor of Weatherford Bermuda, but rather its newly established parent; Weatherford Bermuda is a direct, wholly-owned subsidiary of Weatherford Switzerland; and Weatherford Switzerland and Weatherford Bermuda are separate legal entities.

Vogel, from his review of appellants' Consolidated Petition, opined that, under Swiss law, in conformity with the separate legal entity approach, appellants' claims actually concern the acts and omissions of the directors of Weatherford Bermuda, a "different group company," because they pre-date Weatherford's February 26, 2009 re-domestication. And appellants, as shareholders of Weatherford Switzerland, lack standing or capacity to bring derivative claims against the directors for an asserted breach of duty committed prior to the February 2009 re-domestication. There is no double- or multiple-derivative-action doctrine under Swiss law. Rather, only acts or omissions of the directors that occurred after February 2009 could be relevant in this case.

Martin, in addition to joining Weatherford and the directors' special exceptions, separately filed special exceptions to appellants' Consolidated Petition. He argued that appellants' petition inadequately states a cause of action against him because in it they assert only that he resigned from Weatherford in 2010 and news accounts indicated that he was examined as part of the federal government's investigation of Weatherford.

Appellants, in their response to appellees' pleas to the jurisdiction, asserted that they have standing to bring their claims against the directors of Weatherford Bermuda under the laws of both Bermuda and Switzerland. They argued that they have standing under the laws of Bermuda because their claims fall squarely within United Kingdom Companies Act 2006, section 260, which provides: "A derivative claim under this Chapter may be brought only [with] respect [to] a cause of action arising from an actual or proposed act or omission involving ... breach of fiduciary

duty or trust by a director of the company." [5] Appellants also asserted that they have standing under the laws of Switzerland, pursuant to article 756 of the Swiss Code of Obligations, which states: "In addition to the company, the individual shareholders are also entitled to sue for any losses caused to the company. The shareholder's claim is for performance to the company." [6]

In regard to their claims for alleged breaches of duty committed by the directors of Weatherford from 2009 to 2011, appellants, in their response to appellees' special exceptions, asserted that they adequately pleaded their claims. They also asserted that their claims were not effectively released by the shareholders.

After a hearing, the trial court granted appellees' pleas to the jurisdiction and special exceptions, granted Martin's special exceptions, and dismissed appellants' claims against them. Directors Brady, Butters, Macaulay, Millard, Moses, and Rayne each filed a special appearance, on which the trial court did not rule.

### Plea to the Jurisdiction

In their first issue, appellants argue that the trial court erred in granting appellees' pleas to the jurisdiction, on the ground that appellants' lack standing to bring claims on behalf of Weatherford for the acts and omissions of directors at Weatherford Bermuda, because the laws of Switzerland, and not the laws of Bermuda, govern shareholder standing in this case and entitle them to bring derivative claims. Appellees argue that appellants lack standing because their claims are double-derivative and neither the laws of Bermuda, nor those of Switzerland, authorize double-derivative suits.

We review de novo a trial court's ruling on a jurisdictional plea. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Hous. v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A plea to the jurisdiction may be utilized to challenge whether a plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* We construe the pleadings liberally in favor of the pleader, accept all factual allegations as true, and look to the pleader's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

Review of a plea challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("[T]his standard generally

---

5. *See* Companies Act 2006, c. 46, s. 260 (Eng.).

6. *See* Swiss Code Obligations (SCO), Mar. 30, 1911, art. 756 (Switz.), *as amended by* No I of the Federal Act of 4 Oct. 1991, in force since 1 July 1992 (AS 1992 733; BBl 1983 II 745).

mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).... By requiring the [defendant] to meet the summary judgment standard of proof ..., we protect the plaintiffs from having to put on their case simply to establish jurisdiction."); *see also* Tex. R. Civ. P. 166a(c). A court may consider evidence as necessary to resolve a dispute over the jurisdictional facts, even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226. We take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372 S.W.3d at 635.

▮▮▮ Standing is implicit in the concept of subject matter jurisdiction, and subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing is never presumed, cannot be waived, and may be raised for the first time on appeal. *Id.* at 443–44. We review standing under the same standard by which we review subject matter jurisdiction generally. *Id.* at 446. We look to the facts alleged in the petition, but may consider other evidence in the record if necessary to resolve the question of standing. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). The standing inquiry "requires care-

ful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Heckman*, 369 S.W.3d at 156 (courts "must assess standing plaintiff by plaintiff, claim by claim"). "[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Id.* at 153 ("[S]tanding is not dispensed in gross."). A plaintiff's lack of standing to bring some, but not all, of his claims deprives the court of jurisdiction over those discrete claims. *Id.* at 145. If the plaintiff lacks standing to bring all of his claims, the court must dismiss the whole action for want of jurisdiction. *Id.*

▮▮▮ An individual shareholder generally has "no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Perry v. Cohen*, 285 S.W.3d 137, 144 (Tex. App.—Austin 2009, pet. denied) (quoting *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)). "Accordingly, an action for such injury must be brought by the corporation, not individual shareholders." *Id.* Thus, "to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer." *Webre v. Sneed*, 358 S.W.3d 322, 329–30 (Tex. App.—Houston [1st Dist.] 2011) (quoting *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App.—Tyler 2006, pet. denied)), *aff'd*, 465 S.W.3d 169 (Tex. 2015); *see also Grinnell v. Munson*, 137 S.W.3d 706, 718 (Tex. App.—San Antonio 2004, no pet.) ("[T]he right to proceed against an officer or former officer of a corporation for breaching

a fiduciary duty owed to the corporation belongs to the corporation itself."). In a shareholder derivative suit, "the individual shareholder steps into the shoes of the corporation and usurps the board of directors' authority to decide whether to pursue the corporation's claims." *See Webre*, 358 S.W.3d at 330 (quoting *In re Crown Castle Int'l Corp.*, 247 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist] 2008, orig. proceeding)). A double-derivative suit is based upon the "injury suffered indirectly by the parent corporation, in which the shareholder does have an interest, as a result of injury to the subsidiary." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F.Supp.2d 423, 538 (S.D.N.Y. 2011); *see Webre*, 358 S.W.3d at 334.

▇▇ Where, as here, standing is conferred by statute, the statute itself serves as the proper framework for the analysis. *Cernosek Ents., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 663 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Our primary objective is to give effect to the legislature's intent. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (Vernon 2013).

Here, appellants, in their Consolidated Petition, assert that they, pursuant to Texas Business Corporations Act section 5.14, have standing to bring derivative claims on behalf of Weatherford for breaches of fiduciary duty committed by Weatherford Bermuda's directors. We note that section 5.14 was re-codified as part of chapter 21 of the Texas Business Organizations Code. *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, §§ 1, 17, 2003 Tex. Gen. Laws 267, 448–51, 597 (current version at Tex. Bus. Orgs. Code Ann. §§ 21.551–.563 (Vernon 2012)). Section 21.552, "Standing to Bring Proceeding," provides that a shareholder may not institute or maintain a derivative proceeding unless he was a shareholder of the corporation at the time of the act or omission complained of, or became a shareholder by operation of law from a person that was a shareholder at the time of the act or omission complained of, and he fairly and adequately represents the interests of the corporation in enforcing the rights of the corporation. Tex. Bus. Orgs. Code Ann. § 21.552. It is undisputed that appellants were not shareholders of Weatherford at the time of the complained-of acts and omissions of the directors of Weatherford Bermuda. *See id.* However, where a foreign corporation is a nominal party, as here, issues of standing are governed by the laws of the jurisdiction of its incorporation:

> In a derivative proceeding brought in the right of a foreign corporation, the matters covered by this subchapter are governed by the laws of the jurisdiction of incorporation of the foreign corporation, except for sections 21.555 (stay of proceeding), 21.560 (settlement), and 21.561 (payment of expenses), which are procedural provisions and do not relate to the internal affairs of the foreign corporation.

*Id.* § 21.562(a). Thus, in a derivative proceeding brought in the right of a foreign

corporation, matters of standing are governed by the laws of the jurisdiction of incorporation of the foreign corporation. *See id.*; *see also id.* § 21.552 (governing standing to bring derivative suit).

Further, the "internal affairs doctrine" provides that, with respect to foreign entities, the laws of the entity's jurisdiction of formation govern its internal affairs. *See id.* §§ 1.102, 1.103 ("internal affairs doctrine"); *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557 n.7 (Tex. 2004) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders. . . .") (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982)); *In re Crown Castle Int'l Corp.*, 247 S.W.3d at 354; *see also In re Skyport Glob. Commc'ns, Inc.*, No. 08-36737, 2011 WL 111427, at *15 (Bankr. S.D. Tex. Jan. 13, 2011). The internal affairs of a corporation include (1) the rights, powers, and duties of the corporation's governing authority, governing persons, officers, owners, and members and (2) matters relating to the corporation's membership or ownership interests. TEX. BUS. ORGS. CODE ANN. § 1.105 (Vernon 2012).

The parties disagree on which place of incorporation, Bermuda or Switzerland, provides the substantive law that governs appellants' standing. Appellants assert that the laws of Switzerland, where Weatherford is currently incorporated, govern their standing. Appellees assert that the laws of Bermuda, Weatherford's place of incorporation at the time of the complained-of acts and omissions, govern appellants' standing.[7]

■ Because, as discussed below, we conclude that the outcome of the standing issue is the same under either the laws of Bermuda or those of Switzerland, there is not a true conflict of law presented in this case. In the absence of a true conflict, we need not undertake a conflict-of-law analysis. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984) (before undertaking conflict-of-law analysis, court must first determine whether conflict exists); *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App.—Hous-

7. *See In re Skyport Glob. Commc'ns, Inc.*, No. 08-36737, 2011 WL 111427, at *15–16 (Bankr. S.D. Tex. Jan. 13, 2011). In *Skyport*, the court concluded that the plain language of Texas Business Organizations Code section 1.102 does not clarify which law governs a cause of action that arises while an entity is incorporated in one jurisdiction but becomes owned by an entity incorporated in another. *Id.* at *15. The court noted that it could find no Texas case law interpreting the Texas Business Corporations Act in the context of such facts. *Id.* There, after a merger of SkyComm, a Delaware corporation, and SkyPort, a Texas corporation, SkyPort became the owner of claims that were originally held by SkyComm. *Id.* The court concluded that a claim relating to the internal affairs of a company should be governed by the law of the state which was the state of incorporation at the time that claim arose. *Id.* Further, "the due process clause and the commerce clause require the application of the law of the state of incorporation at the time the cause of action arose." *Id.* at *16. Because the claims arose while the corporation was a Delaware corporation, the claims did not concern the internal governance of a Texas corporation, and the court applied Delaware law. *Id.* at *15. The court reasoned that the law should not change simply because the company that owns the claims becomes incorporated in a new state. *Id.* at *16. The court applied Delaware law to issues related to the internal affairs of SkyComm and Texas law to issues related to the internal affairs of SkyPort. *Id.* at *15. The court noted, however, that the facts of the dispute constituted "one of those rare situations when the rote application of the internal affairs doctrine is inappropriate." *Id.* at *17.

ton [1st Dist.] 2001, pet denied) (no necessity to resolve which state's law applied absent conflict of law on issues presented); *St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 903 n.2 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("In the absence of a true conflict of law, we do not undertake choice of law analysis.").

Appellants, in their Consolidated Petition, present numerous allegations that the directors, generally, breached their fiduciary duties to Weatherford based on acts and omissions dating as far back as 2002. *See Heckman*, 369 S.W.3d at 156 (standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether [the plaintiff] is entitled to an adjudication of the particular claims asserted."). Appellants assert that the directors owed Weatherford a fiduciary duty to adopt and maintain the accounting, financial and internal controls and systems necessary to comply with the FCPA. They discuss in detail the background and experience of each director and assert that he "knew or should have known" that Weatherford's international operations were subject to the FCPA. Appellants allege that each director failed to cause Weatherford to implement and maintain internal controls for compliance with the FCPA, which constituted a breach of the director's fiduciary duty and exposed Weatherford to significant damages and risks of loss. Appellants also complain that, beginning in 2005, each director breached his fiduciary duties by making false representations in

reports to the SEC about Weatherford's revenues and profits.

It is undisputed that Weatherford Switzerland did not exist until 2009. Thus, appellants' claims based on acts and omissions committed by the directors prior to Weatherford's February 26, 2009 re-domestication to Switzerland are necessarily allegations against them in their capacities as Weatherford *Bermuda*'s directors and concerning their duties to Weatherford *Bermuda*. Appellants assert, however, that they are not shareholders of Weatherford Bermuda and they were "never shareholders of Weatherford when it was a Bermuda corporation."[8] Appellants' standing to bring shareholder claims against the directors of Weatherford Bermuda for their breaches of duty to Weatherford Bermuda, that also resulted in damage to Weatherford Switzerland, necessarily derives from appellants' ownership of shares in Weatherford Switzerland. *See Sagarra Invs. v. Cementos Portland Valderrivas*, 34 A.3d 1074, 1080 (Del. 2011). In other words, appellants are suing to enforce rights belonging to a subsidiary, in which they own no interest, to redress injury suffered by the parent, in which they do own an interest.

"A double derivative suit is simply a vehicle for bringing a derivative suit across a second degree of separation." *Yale M. Fishman 1998 Ins. Trust v. Gen. Am. Life Ins. Co.*, No. 11 CIV. 1284, 2013 WL 842642, at *4 (S.D.N.Y. Mar. 7, 2013). Typically, this takes the form of a suit brought by shareholders of a parent company to assert the rights of a subsidiary.

---

8. The parties do not direct us to any "contemporaneous ownership" or "continuing wrong" doctrine applicable under either the laws of Switzerland or Bermuda. *See* Tex. Bus. Orgs. Code Ann. § 21.552 (Vernon 2012); *Crowley v. Coles*, 760 S.W.2d 347, 350 (Tex. App.—Houston [1st Dist.] 1988, no pet.) ("The contemporaneous ownership requirement, adopted by the majority of jurisdictions by statute, court rule, or case law, and by the federal courts, reflects a sound public policy—to prevent a … purchaser of shares from speculating in litigation and purchasing grievances to institute lawsuits against corporate officers and directors.").

*See e.g., In re Bear Stearns Cos.*, 763 F.Supp.2d at 538. In a double-derivative suit, "[t]he wrong sought to be remedied by the complaining shareholder is not only that done directly to the parent corporation in which he or she owns stock, but also the wrong done to the corporation's subsidiaries which indirectly, but actually, affects the parent corporation and its shareholders." *In re Bear Stearns Cos.*, 763 F.Supp.2d at 538; *see also Webre*, 358 S.W.3d at 334.

■■■ Further, it is a fundamental requirement of a double-derivative suit that the injury to the subsidiary must also cause injury to the parent. *See Blasband v. Rales*, 971 F.2d 1034, 1043 (3d Cir. 1992). Here, appellants allege that the directors' breaches of duty to Weatherford Bermuda caused Weatherford Switzerland to incur hundreds of millions of dollars in fines.

We conclude that appellants are required to demonstrate standing to assert their double-derivative claims. *See Sagarra Invs.*, 34 A.3d at 1078 (plaintiff, who owned shares only in parent corporation and sued directors of third-tier subsidiary for breaches of fiduciary duty, required to demonstrate standing to assert triple-derivative claims).

Appellants argue that they need not assert double-derivative claims because Weatherford is essentially the same company after its re-domestication. Each of the directors of Weatherford Bermuda essentially maintained his position as a director of Weatherford Switzerland, the wrongdoing that occurred at Weatherford Bermuda continued after 2009 at Weatherford Switzerland, and Weatherford Switzerland conducts most of its business through its subsidiaries. However, appellants do not direct us to any authority to support their argument that the separate corporate identities should be disregarded. *See* Tex. R. App. P. 38.1(i) ("The brief must

contain a clear and concise argument for the contentions made, with appropriate citations to authorities...."); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).

■■■ Moreover, under Texas law, "the separate identity of corporations will be observed by the courts, even in instances where one may dominate or control the other, or may even treat it as a mere department, instrumentality or agency of the other." *Docudata Records Mgmt. Servs., Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (quoting *Pulaski Bank & Trust Co. v. Tex. Am. Bank, N.A.*, 759 S.W.2d 723, 731 (Tex. App.—Dallas 1988, writ denied)) A parent company and its subsidiary maintain their independence even though the same persons are directors or managers of both corporations. *Lucas v. Tex. Indus.*, 696 S.W.2d 372, 376 (Tex. 1984). The same is true even though most or all the capital stock of a subsidiary corporation is owned by its parent corporation. *Wieser*, 966 S.W.2d at 197.

■■■ Appellees, in their pleas to the jurisdiction, argued that appellants lack standing to sue double-derivatively because neither the laws of Bermuda nor the laws of Switzerland recognize double-derivative claims. Appellees asserted that Bermuda's laws strictly prohibit derivative claims, absent circumstances inapplicable here.

■■■ Although Bermuda is a British Overseas Territory, it has an independent legal system. *See* Mark Chudleigh, Alex Potts, *Current Trends in Discovery Regulations: A Bermuda and Offshore Perspective*, INSIDE THE MINDS: COMPLYING WITH INT'L DISCOVERY REGULATIONS, 2012 WL 3302395, at *1 (Aspatore Books, Sept. 2012). Bermuda follows English common

law and the Bermuda Companies Act 1981. *See D.E. Shaw Oculus Portfolios v. Orient-Express Hotels, Ltd.*, [2010] S.C. 25 at 41 (Berm. Sup. Ct.). In regard to a shareholder's standing to bring a derivative claim, Bermuda follows the rule in *Foss v. Harbottle*, 2 Hare 461 (Eng. 1843). The rule holds that the "proper plaintiff in a suit addressing a wrong done to a company is the company itself." *Erie Cty. Emps. Ret. Sys. v. Isenberg*, No. H-11-4052, 2012 WL 3100463, at *3 (S.D. Tex. July 30, 2012) (quoting *Clark v. Energia Global Int'l, Ltd.*, [2001] S.C. 173 at 10 (Berm. Sup. Ct.)). Thus, Bermudian law does not permit shareholder-derivative suits unless an exception to the rule in *Foss* applies: (1) if the alleged wrong is ultra vires; (2) if the alleged wrong requires a special majority to ratify; (3) if the alleged wrong infringes a shareholder's personal rights; or (4) if the alleged wrong qualifies as a "fraud on the minority." *Isenberg*, 2012 WL 3100463, at *4. Here, appellants do not argue that any of these exceptions apply. Under English common law, the plaintiff bears the burden of establishing standing to bring a derivative suit. *Id.*

Next, appellees, in support of their pleas to the jurisdiction, presented the testimony of their expert, Vogel, that "[t]here is no 'double' or 'multiple' derivative action doctrine under Swiss law." *See* Endrit Karagjozi, Legal Aspects of US-Owned Subsidiaries in Switzerland, 34 (Geneva 2005) ("[T]o date, neither the statutory law nor the case law have dealt with the multiple derivative action...."). Vogel opined that, under Swiss law, in conformity with the separate legal entity approach, appellants' claims concern the acts and omissions of the directors of Weatherford Bermuda, a "different group company," because they pre-date Weatherford's February 2009 re-domestication. And, appellants, as shareholders of Weatherford Switzerland, lack standing or capacity to bring derivative

claims against the directors for an asserted breach of duty committed prior to the February 2009 re-domestication. Rather, only acts or omissions of the directors that occurred after February 2009 could be relevant in this case.

Because Weatherford asserted and presented evidence that appellants lack standing to bring double-derivative claims concerning the alleged acts and omissions of the directors that pre-date Weatherford's February 26, 2009 re-domestication to Switzerland and, thus, that the trial court lacks subject matter jurisdiction over these claims, appellants were required to show that there exists a disputed material fact question regarding the jurisdictional issue. *See Webre*, 358 S.W.3d at 329.

Appellants, in their response to appellees' pleas, asserted that they have standing to bring their claims against the directors of Weatherford Bermuda pursuant to section 260 of the United Kingdom Companies Act 2006. Companies Act 2006, c. 46, s. 260 (Eng.). Section 260 provides that "A derivative claim under this Chapter may be brought only [with] respect [to] a cause of action arising from an actual or proposed act or omission involving ... breach of fiduciary duty or trust by a director of the company." *Id.* There is authority that Bermuda does not apply the United Kingdom Companies Act 2006. *See Isenberg*, 2012 WL 3100463, at *4. We need not resolve this question, however, because appellants abandon it on appeal and concede that, under Bermudian law, the English rule of *Foss* governs a shareholder's standing to sue on behalf of a corporation, provides that derivative claims are owned and controlled by the company and not the shareholders, and a shareholder is not permitted to bring a derivative action on behalf of the company. Appellants assert that *Foss* should not permanently attach to claims arising out of

wrongdoing that occurred while a company is incorporated in Bermuda. Rather, here, Swiss law should apply.

■ Appellants assert on appeal, as they did in the trial court, that they have standing under Swiss law to bring their claims against the directors of Weatherford Bermuda pursuant to article 756 of the Swiss Code of Obligations, which provides: "In addition to the company, the individual shareholders are also entitled to sue for any losses caused to the company. The shareholder's claim is for performance to the company." Swiss Code Obligations (SCO), Mar. 30, 1911, art. 756 (Switz.), *as amended by* No I of the Federal Act of 4 Oct. 1991, in force since 1 July 1992 (AS 1992 733; BBl 1983 II 745).

Although Swiss law recognizes derivative suits, nothing in article 756 confers standing on a shareholder to bring a double-derivative claim. Appellants cite no other authority to support their argument or to controvert Vogel's affidavit. *See, e.g., Richardson v. Newman*, 439 S.W.3d 538, 550 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978)) (application of Swiss law "necessitates the introduction of inevitably conflicting expert evidence on numerous questions of Swiss law"). Rather, appellants simply assert that their research has not revealed anything in Swiss law that prevents them from bringing a double-derive action.

Accordingly, we hold that appellants have not established their standing to bring the portions of their claims based on alleged acts and omissions by the directors that pre-date Weatherford's February 26, 2009 re-domestication to Switzerland. We further hold that the trial court did not err in granting appellees' pleas to the jurisdiction, which appellees limited to appellants' pre-February 2009 claims, and in dismissing appellants' claims. *See Miranda*, 133 S.W.3d at 227–28.

We overrule appellants' first issue.

### Special Exceptions

■ In their third and fourth issues, appellants argue that the trial court erred in granting appellees' special exceptions, which they asserted on the grounds that appellants did not adequately plead a post-2009 cause of action and any such claims were released by shareholder vote and are time-barred, because such claims were adequately pleaded and not effectively released.

■ Even where another jurisdiction's substantive law applies, Texas law governs matters of remedy and procedure in Texas courts. *Moonlight Invs., Ltd. v. John*, 192 S.W.3d 890, 894 (Tex. App.—Eastland 2006, pet. denied). In Texas, a party who wishes to complain about a defect or obscurity in a pleading is required to identify the defect or obscurity in writing and to bring the special exception to the trial court's attention before a judgment is signed. *See* Tex. R. Civ. P. 90, 91; *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("A special exception is a proper method to determine whether a plaintiff has pleaded a cause of action."). Texas follows a fair notice standard for pleading, which looks to whether the opposing party can ascertain from the pleadings the nature and basic issues of the controversy and what type of evidence might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see also* Tex. R. Civ. P. 45 (requirements for pleadings). Pleadings must provide the opposing party with enough information to enable him to prepare a defense. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). The purpose of a

special exception is to compel the clarification of the opposing party's pleading if it is not sufficiently specific or fails to plead a cause of action. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).

"We review a trial court's dismissal of a case upon special exceptions for failure to state a cause of action as an issue of law, using a de novo standard of review." *Alpert*, 178 S.W.3d at 405. We construe special exceptions liberally in favor of the pleader. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Thottam v. Joseph*, No. 01-13-00377-CV, 2015 WL 1632454, at *8 (Tex. App.—Houston [1st Dist.] Apr. 9, 2015, pet. denied) (mem. op.). "We accept all of the plaintiff's material factual allegations and all reasonable inferences from those allegations as true." *Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex. 1994). Pleadings are sufficient if a cause of action may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). "Generally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure." *Sonnichsen*, 221 S.W.3d at 635. In such case, the court may render a judgment dismissing the case. *See Ryan*, 960 S.W.2d at 658; *Alpert*, 178 S.W.3d at 408.

Appellees specially excepted to the allegations in appellants' Consolidated Petition on the ground that they did not sufficiently plead a cause of action based on post-2009 conduct by the directors. Appellees assert that, under Swiss law, the elements of a claim for liability against a corporate officer or director require (1) a breach of duty, (2) fault by the officer or director (i.e., a willful or negligent breach of duty), (3) causation, and (4) damages. *See* Swiss Code Obligations (SCO), Mar. 30, 1911, arts. 752–55 (Switz.), *as amended by* No I of the Federal Act of 4 Oct. 1991, in force since 1 July 1992 (AS 1992 733; BBl 1983 II 745). They argue that appellants failed to sufficiently plead these elements in regard to their claims that the directors breached duties to implement controls during the post-2009 period because appellants failed to assert particularized facts.

Martin also specially excepted to appellants' Consolidated Petition on the ground that it inadequately states a cause of action against him because in it they assert only that he resigned from Weatherford in 2010 and that news accounts indicated that he was examined as part of the federal government's investigation of Weatherford.

In their fifty-page Consolidated Petition, appellants present in detail their factual allegations against each director. They detail the fiduciary duties that the directors owed to Weatherford Switzerland post-2009, including supervision of its accounting functions and preparation of its annual report. Appellants allege that the directors committed several breaches of duty. For example, they allege that on March 1, 2010, Duroc-Danner, Brady, Butters, Macaulay, Millard, Moses, and Rayne executed and filed Weatherford's 2009 annual report. In the report, the directors represented that Weatherford's international revenues had increased by $921 million, or eighteen percent, compared to the prior year. Appellants allege that these statements, in fact, are materially false and misleading because they do not disclose that Weatherford's reported revenues were overstated as a result of contracts and sales that were obtained by making improper payments to foreign officials. They allege that the directors are experienced international business professionals, some of whom have extensive experience serving on the boards of other internation-

al energy companies, and that their breaches of duty were either negligent or intentional. Further, such breaches of duty caused Weatherford Switzerland to incur costs arising from the appointment of a Corporate Monitor and the implementation of various remedial measures.

We conclude, in regard to the directors' conduct occurring from February 2009 to 2011, that the allegations in appellants' Consolidated Petition are sufficient to provide fair notice of their claims to Weatherford and to the directors.

█ In regard to Martin, however, appellants do not state any facts specific to him that could support a finding of liability against him on their claims. Appellants assert only that Martin resigned from Weatherford in 2010 and news accounts indicated that he was being examined as part of the federal government's investigation of Weatherford. Appellants fail to meet the fair notice standard because their pleading does not include facts sufficient to support a finding of liability against Martin, as a specific defendant. *See Ford v. Performance Aircraft Servs., Inc.*, 178 S.W.3d 330, 335 (Tex. App.—Fort Worth 2005, pet. denied). Generally, appellants should be given an opportunity to amend their pleading. *Sonnichsen*, 221 S.W.3d at 635. We note, however, that Neff, in his original petition, did not allege any facts specific to Martin. On January 1, 2014, Martin filed special exceptions, complaining that Neff, in his original petition, had not stated any facts specific to Martin that could support liability against him. And appellants, in their Consolidated Petition, do not state any facts particular to Martin that could support a finding of liability against him. We conclude that the allegations in appellants' Consolidated Petition are insufficient to provide fair notice of their claims to Martin.

█ Weatherford and the directors also specially excepted to appellants' claims in regard to the conduct of the directors from 2009 to 2011 on the ground that such claims were released by shareholder vote and are now time-barred. Weatherford asserts that Swiss law provides that the Annual General Meeting of Shareholders may grant officers and directors a full and unqualified discharge from liabilities for prior acts or omissions. *See* Swiss Code Obligations (SCO), Mar. 30, 1911, art. 698 (Switz.); *see also Richardson*, 439 S.W.3d at 550 (discussing *decharge* doctrine in Swiss corporate law).

Article 698 provides that the "supreme governing body of a company limited by shares is the general meeting," which has the power to discharge the members of the board of directors. Swiss Code Obligations (SCO), Mar. 30, 1911, art. 698 (Switz.). A resolution of release adopted at a general meeting is effective only for disclosed facts. *Id.* art. 758, para. 1. A right of action of a shareholder who did not approve the resolution lapses six months after the resolution. *Id.* art. 758, para. 2.

Appellees assert that at each of the Annual General Meetings held in June 2010, May 2011, and May 2012, the shareholders approved the discharge of its board members and executive officers from liability under Swiss law for acts and omissions occurring during the respective prior year. The resolutions of release adopted were effective as to all of their 2009 to 2011 acts or omissions. Further, appellants' ability to assert claims based on the released conduct that occurred from 2009 to 2011 expired by operation of Swiss law in November 2012. And appellees assert that appellants' ability to bring claims expired before they filed their Consolidated Petition, on March 10, 2014. Further, appellants did not raise any post-2009 allega-

tions in their original petition, filed in 2010.

The purpose of special exceptions is to compel clarification of a pleading that fails to plead a cause of action or is not clear or sufficiently specific. *Sonnichsen*, 221 S.W.3d at 635. A special exception should confine itself to pointing out defects in the other party's pleading that should be remedied before a substantive response is required. *O'Neal v. Sherck Equip. Co.*, 751 S.W.2d 559, 562 (Tex. App.—Texarkana 1988, no pet.). The exception cannot inject factual allegations that do not appear in the pleading. *Augustine By Augustine v. Nusom*, 671 S.W.2d 112 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). An allegation of release constitutes an affirmative defense. *See* Tex. R. Civ. P. 94. Affirmative defenses are matters of avoidance that must be proven at the trial of the case and are not properly raised as special exceptions. *See Simulis, L.L.C. v. Gen. Elec. Capital Corp.*, 392 S.W.3d 729, 735 n.7 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Villarreal v. Martinez*, 834 S.W.2d 450, 452 (Tex. App.—Corpus Christi 1992, no pet.); *O'Neal*, 751 S.W.2d at 562 (defense of release not properly raised by special exception); *Interfirst Bank San Antonio N.A. v. Murry*, 740 S.W.2d 550, 551 (Tex. App.—San Antonio 1987, no pet.).

Accordingly, we hold that, in regard to appellants claims based the conduct of the directors from 2009 to 2011, the trial court erred in granting appellees' special exceptions on the ground that Weatherford's shareholders had released them from all liability.

We sustain appellants' third and fourth issues in part and overrule them in part.

## Special Appearances

In their second issue, appellants argue that the trial court erred in granting the special appearances of directors Brady, Butters, Macaulay, Millard, and Rayne because they are subject to personal jurisdiction in Texas. Brady, Butters, Macaulay, Millard, and Rayne argue that there are no appealable issues presented because the trial court did not rule on their special appearances.

Appellants do not direct us to, and our review does not reveal, any portion of the record in which the trial court ruled on the directors' special appearances. Thus, nothing is preserved for our review. *See* Tex. R. App. P. 33.1 (as prerequisite to presenting complaint for appellate review, record must show that trial court ruled on request or refused to rule and complaining party objected to refusal); *Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265, 266 (Tex. App.—Dallas 1986, no writ) ("A special appearance not ruled upon by the trial court presents nothing for review."); *Steve Tyrell Prods., Inc. v. Ray*, 674 S.W.2d 430, 437 (Tex. App.—Austin 1984, no writ).

## Conclusion

We affirm the trial court's order granting Martin's special exceptions and dismissing all claims against him. We affirm the portion of the trial court's orders in which it granted appellees' pleas to the jurisdiction regarding the acts and omissions of the directors pre-dating Weatherford's February 26, 2009 re-domestication to Switzerland. We reverse the portion of the trial court's orders in which it granted Weatherford and the directors' special exceptions regarding the acts and omissions of the directors' occurring from 2009 to 2011. We remand the case to the trial court for further proceedings consistent with this opinion.